(No. 19602.—

MANIA SLUKA, Appellee, *vs.* SZECZEPAN L. BIELICKI,
Appellant.

*Opinion filed June 19, 1929.*

ROSENBERG, BRAUDE & ZIMMERMAN, (H. J. ROSENBERG, and IRVING S. BERMAN, of counsel,) for appellant.

ERWIN E. COWEN, (JAMES DONAHOE, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county granting specific performance of a contract for the sale of real estate, brought by appellee as vendee against appellant as vendor.

The facts necessary to an understanding of the cause, told in their chronological order, are as follows: On the 20th day of September, 1919, the contract for the sale of certain real estate located in the city of Chicago, known as 2850 West Twenty-second street, was executed between appellee as vendee and appellant as vendor. By it appellant contracted to convey to appellee for the purchase price of $7000, "a good and merchantable title" to the said property, by warranty deed, "with release of dower and homestead rights," subject to existing leases, prorating of taxes and insurance premiums. The contract acknowledges that $250 was paid as earnest money, to be applied on the purchase price, and provides that the vendee shall, within five days after title has been examined and found good or accepted, pay the further sum of $1250 cash, "provided a good and sufficient warranty deed conveying to said purchaser a good and merchantable title to said premises (subject as aforesaid) shall then be ready for delivery. The balance to be paid as follows: The purchaser agrees to make a first mortgage from a building and loan association in the amount as the association shall decide, and the money

so realized shall be paid to the seller, and for the balance a second mortgage shall be given to the seller to make up the sum of $5500, with monthly payments of $30, including interest from date hereof at the rate of six per cent per annum," etc. The contract also provides that a complete and merchantable abstract of title brought down to the date of the contract is to be furnished by the vendor in reasonable time, the purchaser or his attorney in ten days to deliver to the vendor a note or memorandum in writing specifying in detail the objections he makes to the title, if any, or if none, stating in substance that the same is satisfactory. The contract also provides sixty days for curing defects, with the usual provision that the purchaser may nevertheless elect to take the title as it then is, provided she shall have first given a written notice of such election within ten days after the expiration of the term of sixty days and tendered performance on her part, and in default of such notice of election to perform, with tender, within the time limited, the contract becomes of no force and effect.

This contract was executed in the office of one Louis J. Mayer, a real estate broker, who prepared it. Shortly thereafter appellee made an application to the St. Casimir's Building and Loan Association for a loan of $5000 on the property. This was later refused. The abstract was delivered to her for examination within a week after the contract. It does not appear that any opinion of title or acceptance of the title in writing was at any time delivered to the vendor. Some time after the contract was made appellant had a deed, and later a second deed, drawn and sent to his wife in Poland to have her execute them. She did not sign the deeds and was not then living in this country. Appellee testified that at the time of signing the contract appellant represented that he was a widower. About two weeks after the signing of the contract appellee moved into the premises and occupied the second floor thereof, and

appellant thereafter also moved into the premises and occupied the third floor, and it was agreed that appellee should pay rent to appellant until the deal was closed, after which appellant was to pay rent to appellee. The deeds sent to appellant's wife were not returned. Appellee testified that on March 15, 1920, appellant again agreed to complete the contract by April 13, 1920.

Nothing further appears to have been done about the contract until the 13th of April, 1920, when the parties met in the office of Mayer. The testimony as to what occurred there is not in agreement. Appellee and her witnesses testified that she had previously made an application to the Manning Building and Loan Association for a loan on this property in the sum of $5000; that the loan had been accepted, and that Louis J. Mayer, who was secretary of that loan association, had in his possession a check of the association for $5000 with which to close the deal. It appears that the contract and the mortgage executed by appellee to the Manning Building and Loan Association were recorded, though she had no title to the premises when the mortgage was made. Appellee testified that appellant there told her he could not make the deed because his wife would not sign it. It appears that prior to that date appellant's wife had come to Chicago and on that day was living with him in the premises. Appellee testified that she went to the home of appellant to get appellant's wife to sign the deed but that she refused to do so. Appellee's evidence is also that she then stated to appellant that she would take the property with his name, only, on the deed, and that he refused but would execute a deed for $8000. This is denied by appellant, who testified that when it was found that his wife would not sign the deed appellee stated that she was unwilling to take the property. Mayer testified that he had the $5000 check which was tendered to appellant, together with cash in the sum of $1250 and a second mortgage for $500, and that

appellant refused to accept them. He states also that appellee expressed a willingness to take the property without the signature of appellant's wife to the deed. He states, however, that he had the check there for the purpose of turning over to appellant the balance over and above a mortgage already existing against the property, held by the St. Casimir Building and Loan Association, which he testified was to be paid off. He does not testify that he was willing or had authority to turn over this $5000 check on behalf of the Manning Building and Loan Association for a deed signed only by appellant, and subject, as such a deed would be, to the wife's dower and homestead right, and there is nothing in the record to indicate that the building and loan association which was offering to loan $5000 on this property was willing to turn over the check on this loan when it developed that the title in appellee would be so defective or that it was willing to make the loan on any other than a clear title in appellee. It was admitted that appellee had no funds other than those here mentioned, rendering her able to purchase at the time of this meeting.

On May 15, 1920, appellant served on appellee a thirty-day notice to quit the premises as tenant. On May 27, 1920, there was filed in the municipal court of Chicago, for appellee, a suit to recover damages for the breach of the contract involved in this case. The suit was instituted by her attorney who had represented her throughout the transaction. The amount of damages claimed was the sum of $995. Summons was issued and served on appellant, who appeared, and appellee was ruled to file in that suit a more particular statement of claim, which was done on the 4th day of June, 1920. An affidavit of merits was filed in reply thereto on June 7 denying the right to damages. This cause remained pending in the municipal court until October 7, 1920, when it was dismissed for want of prosecution. During the month of June, 1920, following the expiration of the thirty days included in the notice which

appellant gave to appellee to quit the premises, a suit for forcible detainer was instituted by appellant against her, and on July 27, 1920, a judgment for possession was rendered against her. On the 30th of August, 1920, she vacated the premises. It does not appear from the record whether her claim to the premises under this contract was urged in the forcible detainer suit.

Nothing further appears to have been done about this contract or the dealings between these parties until the latter part of August or early in September, 1921, when appellant sought to remove from the records the mortgage executed by appellee to the Manning Building and Loan Association and this contract, both of which had been recorded. Anthony B. Chrzanowski, an attorney at law, testified that about that time the parties met at the office of Mayer to have a settlement of their differences; that appellee asked $900 damages, but that witness replied that he would not advise his client to pay over $300, which he thought was the amount of the original deposit, but that no agreement was had. It appears that during the summer of 1921 appellant's wife secured a divorce from him. Thereafter, during the year 1921, appellant began repairs on the premises and expended the sum of $350 prior to the institution of the present suit and the sum of $3500 thereafter.

The bill in this case was filed on December 9, 1921. Demurrers to the original and four successive amended bills were either sustained or confessed, and on June 22, 1923, the fifth amended bill of complaint was filed, to which appellant filed an answer. The cause was referred to a master, who reported recommending a decree for specific performance. Exceptions thereto were overruled by the chancellor and a decree in accordance with the master's recommendations was entered.

Appellant assigns numerous errors, some of which are as follows: That the contract is vague, uncertain, indefi-

nite and incapable of specific performance; that the complainant, under the evidence, was not able to carry out the terms of the contract on April 13, 1920, at the time she testified she made a tender; that the suit at law instituted by appellee against appellant in the municipal court of Chicago constituted an election of remedies on her part and barred any action for specific performance; and that the fact that appellee did nothing toward enforcing the contract for more than a year and a half after the time when she claims she tendered performance and made no defense to the forcible entry and detainer suit, shows she abandoned the contract.

Considering, first, the objection that the contract is not definite, we have seen that the contract as hereinbefore set out provides: "The purchaser agrees to make a first mortgage from a building and loan association in the amount as the association shall decide, and the money so realized shall be paid to the seller, and for the balance a second mortgage shall be given to the seller to make up the sum of $5500, with monthly payments of $30, including interest," etc. The contract does not specify what part of the purchase price shall be represented by a first mortgage and what part by a second, but that matter is left to the decision of a third party, a building and loan association not named in the contract. The definite statement is that the two mortgages shall make up the sum of $5500, and that the purchaser agrees to make a first mortgage in such an amount as a building and loan association shall decide. It is left to appellee to select the loan association, and to that association to determine what the first mortgage loan shall be. Under the contract the purchaser does not agree to secure the largest sum possible on a first mortgage. After she decides what amount to apply for and the loan association to whom she applies decides what it will loan, then, and not until then, may appellant know the amount of the second mortgage which he is to take as part of the purchase

price. If the vendee chooses to ask for or a loan association decides to loan not to exceed $2000 or $3000, then appellant is required to take a second mortgage for $3500 or $2500. He is entitled to know, under the contract, just what his second mortgage is to be. The first mortgage is to be made payable to the building and loan company, but he is required to take the second mortgage as a part of the purchase price, and the contract does not indicate the amount of the mortgage he was required to take. An agreement which does not purport to give an absolute right without further negotiations thereon cannot be specifically enforced. To entitle one to specific performance of a contract it must be so certain and unambiguous in its terms and in all its parts that the court can require the specific thing contracted to be done. (*London* v. *Doering*, 325 Ill. 589; *Westphal* v. *Buenger*, 324 id. 77; *Koch* v. *National Union Building Ass'n*, 137 id. 497.) The terms of this contract are indefinite and uncertain as to the amount of the second mortgage which appellant is required to take and the contract is not enforcible in equity.

It seems likewise clear that appellee made an election of remedies by filing a suit in the municipal court for damages for breach of the contract. In her testimony she declares that she did not authorize her attorney to start this suit, and the chancellor so found, but we are of the opinion that the evidence does not justify this finding. The attorney who filed this suit for her was her attorney throughout the transactions prior to the filing of the present bill. She offers in evidence a receipt for $10, dated October 25, 1920, which states that it is for costs in the specific performance case. It will be observed, however, that this receipt was not given until eighteen days after the suit in the municipal court had been dismissed for want of prosecution, and might well have been the receipt for payment on the costs for this present suit. Appellant testifies that a short time after the dismissal of the suit in

the municipal court he talked with appellee and she asked him if he would settle with her for $500, and that he replied he would settle with her for any amount if she would show him where she had spent any money on him. This testimony is not denied by appellee, nor is the testimony of Chrzanowski, hereinbefore detailed, concerning the attempt at settlement in August or September, 1921. The amended affidavit of claim filed in the suit in the municipal court enumerates twenty-one items, making up a total of $995. The detail of that affidavit could scarcely have been known by an attorney without consultation with his client. We are of the opinion that the evidence shows that appellee did know of and authorize the municipal court suit.

Where two remedies for the breach of a binding contract exist, one an action at law for violation of the contract and the other for specific performance, and one of these remedies is elected by the party suing, then, under the doctrine of election of remedies, he cannot resort to the other. (*Bell* v. *Anderson*, 292 Ill. 605.) Where the doctrine of election of remedies applies the bar arises as soon as the choice is made, and becomes full and absolute against the other remedy at the time of the filing of the petition, declaration or claim. (*Bradner Smith & Co.* v. *Williams*, 178 Ill. 420.) This has been the rule in this State since *Herrington* v. *Hubbard*, 1 Scam. 569.

Counsel for appellee contend that appellee's damage suit was, at most, but a misapprehension of remedies, and that one will not be held to be barred of a proper remedy because he has through misapprehension pursued the wrong remedy. The cases cited to this point sustain that proposition, but this is not a case of that character. This is not a misapprehension of remedies but an election of one of two remedies, each of which is a proper remedy. Filing the suit in the municipal court was evidence of her determination to treat the contract as rescinded, and that is equivalent to an express disaffirmance of it. (*Herrington*

v. *Hubbard, supra.*) That appellee, prior to the time of filing her bill herein, considered this contract rescinded is further evidenced by the fact that the municipal court suit was started twelve days after she received notice to quit the premises, and the further fact that she did not, so far as the record shows, in the forcible detainer suit, which followed such notice, assert any claim to the premises under the contract. No bill was filed by her to compel the specific performance of the contract until December 9, 1921.

Other errors are assigned on this record, but as those considered are conclusive against appellee's right to specific performance of this contract it is unnecessary to consider further errors.

The decree of the circuit court is reversed and the cause remanded to that court, with directions to dismiss appellee's bill. *Reversed and remanded, with directions.*