(No. 20183—)

Jacob Braude, Appellee, *vs.* Stephan Wardy, Appellant.

*Opinion filed June 20, 1930.*

Schein & Beckwith, for appellant.

JAMES PERCIVAL PIO, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county ordering appellant, Stephan Wardy, to specifically perform a contract for the sale of real estate in DuPage county, entered into by appellee, Jacob Braude, as vendor and appellant as vendee.

On July 30, 1929, a written contract was entered into by the parties for the purchase and sale of lots 26 and 27 in Tiedemann & Franzen's subdivision of blocks 2 and 4 in Brettmann's addition to Bensenville, in the southwest quarter of section 13, township 40, north, range 11 east of the third principal meridian, in the village of Bensenville, DuPage county, together with all improvements thereon, consisting of a two-story hotel and restaurant and including all the fixtures thereto belonging. The purchase price was $20,000—$1000 cash, which was paid, $5000 to be paid within five days after the title had been examined and found good or accepted, provided a good and sufficient general warranty deed conveying to the purchaser a good and merchantable title to the premises (subject to a mortgage of $8000, due in three years, with interest at seven per cent per annum, payable semi-annually,) shall then be ready for delivery, the balance to be paid as follows: A first mortgage of $3500, due in five years, with interest at six per cent, secured by property at 1557 Clybourne avenue, Chicago, and the balance of $2500 to be paid in monthly installments of $100 or more, to be secured by mortgage or a trust deed on the premises. The contract was in the usual form in use in such cases in the city of Chicago. The contract provided that a certificate of title issued by the registrar of titles of Cook county or a merchantable title guaranty policy made by the Chicago Title and Trust Company should be furnished by the vendor to the vendee within a reasonable time, and that the purchaser or his attorney, within

ten days thereafter, should deliver to the vendor or his agent a note or memorandum in writing, signed by him or his attorney, specifying in detail the objections he makes to the title, if any. In case material defects be found in the title and so reported, it is provided that if such defects be not cured within sixty days after such notice thereof the contract should at the purchaser's option become null and void and the earnest money returned. On August 7 appellant went to W. H. Katt's office, who was appellee's attorney, and told him that he could not go through with the deal and buy the property, giving his reasons for not wishing to do so. There is a decided conflict in the testimony as to what those reasons were, but it is not claimed by either party that the reasons assigned were any which are now here assigned as reasons why appellant should not be compelled to carry out his contract. Appellee procured from the Chicago Title and Trust Company a guaranty policy and gave the same to appellant and told him to submit it to a lawyer. Appellant, without submitting the same to a lawyer, returned it to appellee with the statement, "Well, the papers might be all right but I cannot take the property—I cannot buy it." He was again given the guaranty policy and told to have it examined by his attorney. On August 13, 1929, Katt, as attorney for appellee, received a letter from a lawyer purporting to represent appellant, stating that the lawyer had advised appellant that he was under no obligation to proceed with the consummation of the contract and was entitled to a return of the earnest money for the reasons (1) that the description of the premises in the contract is indefinite, in that they are described as lots 26 and 27 in Tiedemann & Franzen's subdivision, etc., while the guaranty policy described the premises as lots 26 and 27 in block 4 in Tiedemann & Franzen's subdivision; (2) that under the terms of the contract he is to accept the premises subject to a first mortgage in the sum of $8000, due in three years, with interest at seven per cent per annum, payable semi-

annually, while the guaranty policy shows that the premises are subject to a trust deed dated February 3, 1919, made by Robert Leith and wife to the Chicago Title and Trust Company to secure their eight notes, one for $5000 and seven for $1000 each, all due five years after date, with interest at six per cent per annum, payable semi-annually; and (3) that at the time appellant entered the contract he was assured that there were no special assessments against the premises and that all assessments for improvements completed had been paid in full, while the policy shows four special assessments unpaid. The letter stated that for these reasons appellant refused to go on with the contract and insisted on a return of his earnest money. Appellee tendered a deed to appellant and demanded that he complete the deal, which he refused to do.

While the deed tendered appellant described the property as lots 26 and 27 in block 4 in Tiedemann & Franzen's addition and the contract described them as lots 26 and 27 without mentioning block 4, they were further described as being in the village of Bensenville and as having a two-story hotel and restaurant thereon, and there is no evidence shown by the abstract tending to show that appellee owned lots 26 and 27 in any block other than block 4, or that in the village of Bensenville there was any other two-story hotel and restaurant, or that there were lots 26 and 27 in any block in the subdivision other than in block 4. The contract is not shown by the evidence to have been indefinite in this respect.

It is further contended by appellant that by the contract the premises were to be subject to a mortgage of $8000, due in three years, while the guaranty policy showed that the premises were subject to a trust deed due February 3, 1919, to secure notes aggregating $12,000. Appellant was given, together with the guaranty policy, before he submitted it to his lawyer, a letter from the Humboldt State Bank stating that it was the owner and holder of the trust deed

mentioned in the guaranty policy and that notes aggregating $4000 secured by the trust deed had been paid and canceled and that there was now remaining unpaid thereon $8000, the payment of which sum had been extended to February 2, 1932. Appellant's receipt of the policy and letter dated August 7, 1929, is shown by the evidence. Prior to the entry of the decree the time of the payment of the $8000 was extended to August 2, 1932. There is no variance between the contract and the deed tendered which would preclude a decree for the specific performance of the contract.

The original contract provided that the vendor should have sixty days in which to cure any objections which might be made to his title. The contract provided that certain special assessments should be paid by the vendee and others by the vendor. While certain special assessments are shown by the guaranty policy to have been made against the land it does not appear to what class they belong. The letter of appellant's attorney did not give appellee sixty days' time in which to clear up any liens or special assessments which should be paid by appellee but declared the contract void and demanded the payment of the earnest money. The evidence shows that appellee was at all times able, ready and willing to comply with the terms of the agreement entered into by him. The warranty deed which he tendered appellant was, so far as it appears from the abstract, in compliance with the terms of the contract. The mere fact that the vendor's property is encumbered or his title is defective at the time the contract of sale is made will not prevent his enforcing the contract in equity if he has removed the encumbrance and perfected the title by the time he is required by his contract to convey it, and, when he has acted in good faith, relief will be granted him if he is ready to furnish a clear title at the time of the decree, provided the delay has not prejudiced the purchaser. *Anderson* v. *Bills,* 335 Ill. 524; *Cohen* v. *Segal,* 253 id. 34; *Mason* v. *Caldwell,* 5 Gilm. 196.

When appellant told appellee that he could not carry out the contract and buy the property one of the reasons he gave was that he was going to go back to the "old country," and when he definitely refused to carry it out after appellee's tender of the deed and prior to the commencement of this suit, appellee brought an attachment suit against him in the circuit court of Cook county and had the writ served on the Continental-Illinois Bank and Trust Company and the Prudential State Savings Bank, as garnishees. The attachment suit was pending at the time of the hearing in this case. On September 21, 1929, appellant filed in this cause a petition setting out that prior to the institution of the present suit the same plaintiff had instituted an action at law against him, an attachment, and had sequestered some $5600 worth of his property, and prayed the court that the appellee elect whether he would proceed with his suit at law or in equity. On October 7, 1929, appellant made a motion to compel appellee to elect, which was denied by the chancellor. It was claimed that appellee had elected to proceed at law and after having so elected he was barred from maintaining the present proceedings. These contentions on the part of appellant were all overruled by the court. It is here claimed that where two remedies for the breach of a binding contract exist, one an action at law for a violation of the contract and the other for a specific performance, and one of these remedies is elected by the party suing, then, under the doctrine of election of remedies, he cannot resort to the other. While in this State, where two remedies for the breach of a binding contract exist,—one an action at law for damages based on a violation, rescission or abandonment of the contract and the other for its specific performance,—and one of these remedies is elected by the party suing, then, under the doctrine of election of remedies, he cannot resort to the other, (*Sluka* v. *Bielicki,* 335 Ill. 202; *Bell* v. *Anderson,* 292 id. 605; *Herrington* v. *Hubbard,* 1 Scam. 569;) yet if co-existent remedies are

consistent with each other he may adopt all or select any one which he thinks best suited to the end sought, and only the satisfaction of the claim in one case constitutes a bar of the other. The inconsistency of the remedies is essential to preclude the resort to one after having adopted another, and the party must actually have two remedies and not merely suppose that he has, for a mistake in his remedy in one case is not a bar in the other. (*Bradner Smith & Co.* v. *Williams,* 178 Ill. 420; *Stier* v. *Harms,* 154 id. 476; *Flower* v. *Brumbach,* 131 id. 646; *Gibbs* v. *Jones,* 46 id. 318.) The affidavit for attachment and the declaration in that case appear in the abstract, and they show that this case differs from *Sluka* v. *Bielicki, supra,* and the other cases cited, in that in those cases the suits were for damages arising from a violation, rescission or abandonment of a contract, while in the present case the attachment suit was not for such damages on a contract no longer in force but was based on the present existence of a contract which was set up in the affidavit and declaration and was for money due under its terms. The attachment being for the purpose of tying up appellant's funds which he then had in the two banks and to prevent the removal of them by appellant to the "old country," and so rendering futile any decree which might be rendered in this suit, the two remedies were not inconsistent, and appellee, by bringing the attachment suit, was not precluded from prosecuting this one. Although the law will not permit a party to have more than one satisfaction for his debt, yet it permits him to carry on several remedies at the same time, so long as they are not inconsistent with each other. *Ridgely Bank* v. *Patton & Hamilton,* 109 Ill. 479.

The master admitted in evidence, over appellant's objection, what purported to be a certified copy of the record of a trust deed dated January 3, 1919, and recorded on February 19, 1919, as Document 1,355,502, made by Robert Leith and wife to the Chicago Title and Trust Company

to secure their eight notes, one for $5000 and seven for $1000 each, all due five years after date, with interest at six per cent per annum, payable semi-annually, together with any further costs or charges accrued or to accrue under the terms of the trust deed. The certificate was made by the clerk of the circuit court and *ex-officio* recorder of deeds of DuPage county. It is claimed that the statutory proof necessary to be made before the introduction in evidence of such copy was not made. The existence of this trust deed, its record and contents are not an issue in this case. The allegations of the bill, the answer and the guaranty policy all agree with reference thereto, and the agent of the owner of the notes secured by the trust deed was allowed, without objection, to fully describe in his evidence this trust deed, the notes secured thereby and the amount remaining due and unpaid thereon. The error in this respect could not have prejudiced appellant.

Appellant claims that he was induced to enter into the contract by false representations. On this subject in his brief he says: "He [appellant] was thereupon taken up on the mountain, and during the transit was told by Palla, appellee and another gentleman of what a good business could be done at the hotel in Bensenville and how much money he could make. From the mountain top there were pointed out to him the beauties and advantages of the sunny plains below, to-wit, that the gambling privileges were then netting a man $150 a week, and that by a judicious co-mingling of the business of selling whisky and beer and operating a place of assignation these amounts would be enormously increased—'that I could make a fortune.' As evidence of the prosperous condition of the hotel and restaurant the fact was pointed out to him that a cook and two helpers were employed day and night. As to the *modus operandi* of conducting the 'speakeasy' and the methods to be employed in avoiding interference by legal authorities there was promised to him an introduction to [a certain official], which

official, it was hinted, ('Whisper it not in Gath and tell it not in Ascalon,') on a modest remuneration would overlook any Volsteadian delinquencies." The making of these representations was denied. This defense is not tenable.

Finding no reversible error in the record the decree of the circuit court is affirmed.

*Decree affirmed.*