(No. 24880.—

CARRIE B. FLEMING *et al.* Appellees, *vs.* JESSIE DILLON *et al.* Appellants.

*Opinion filed December 19, 1938—Rehearing denied Feb. 8, 1939.*

J. F. STURGEON, and WHITMORE & WHITMORE, for appellants.

MARTIN, HOOSE & DEPEW, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Carrie B. Fleming and Leota Dee Gates filed in the circuit court of McLean county a complaint against Jessie

Dillon and others, heirs of Marshall A. Brown, deceased, for the specific performance of an alleged oral contract between Brown and the complainants, whereby the former, in consideration of the care and services to be rendered by the complainant Carrie B. Fleming to Brown during the remainder of his life, would devise and bequeath his land and personal property to the complainants. The complaint alleges that the complainant Carrie B. Fleming performed her part of the agreement but upon the death of Brown the complainants were unable to find a will executed by him. The prayer of the complaint is that the heirs of Brown, the defendants in this case, be required to perform the contract, or upon their failure to do so the master in chancery of the court be directed to make and execute the proper conveyances and that such further relief as equity might require be granted.

Certain of the defendants answered the complaint, admitting some of the allegations, neither admitting nor denying others, but denying that the complainants are entitled to have the conveyances made as requested in the complaint. A separate defense averred in the answer is that the alleged agreement is contrary to the Statute of Frauds and Perjuries. Another defense presented is that the complainants had filed a claim against the estate of Brown and, by so doing, disaffirmed the alleged agreement and elected to pursue an inconsistent remedy in the probate court of McLean county. Oral testimony and depositions were heard and considered by the master in chancery. He made a report of the evidence and recommended a decree in accordance with the prayer of the complaint. The court approved and confirmed the master's report and entered a decree in favor of the complainants. The defendants have prosecuted this appeal.

Marshall A. Brown, a bachelor, was for many years a resident of the city of Normal, in McLean county, and owned considerable land and some personal property. In

the later years of his life he was not actively engaged in business but supervised his farms. In 1892, he moved to the home of a brother, Maurice Duett Brown, in Normal, and about that time or some time afterward purchased the house occupied by his brother. Maurice Brown died in 1909, leaving Effie Brown, his widow, in the possession of the home. Marshall A. Brown continued to live at the same place with Effie Brown and her two daughters, Carrie and Leota, who were afterward married and are the complainants in this suit. In 1915, Carrie Brown took a position as teacher, and was thereafter away from the family home during school-years. In 1917, Leota married and moved to Pennsylvania. Effie Brown died in 1919. About that time Carrie Brown discontinued teaching and remained in the home with Marshall A. Brown, as housekeeper. She married Birney Fleming in 1922, and she, her husband and Brown thereafter resided together in the house owned by Brown until he sold it in 1934, when they all moved to a house in Normal owned by Birney Fleming, and Carrie B. Fleming continued to perform the housework, with occasional help, until Brown's death on February 3, 1936, at the age of eighty-six years. The evidence discloses that Carrie B. Fleming assisted Brown in his business matters with tenants and others, and because of kidney and prostate trouble he required additional care, especially with respect to his clothing. After the marriage of Carrie B. Fleming bills for the home were charged to and paid by Birney Fleming, with the exception of a few bills which Brown paid. It also appears from the evidence that Brown had borrowed money from the complainants and their mother, a more detailed account of which is hereafter recited, and this was never repaid.

A number of witnesses on behalf of the complainants testified with respect to the care and attention given by Carrie B. Fleming to Marshall A. Brown, and about conversations in which Brown acknowledged that, because of

such services, he had arranged to leave his property to Carrie and Leota, the complainants. At least thirty of these witnesses testified that Brown stated to them (though in different forms of phraseology) that he had either made a will for the benefit of the girls, meaning Carrie and Leota, or had provided for them, and specifically mentioned two farms which would be theirs upon his death. In one conversation Brown stated that he had other nieces than Mrs. Fleming and Mrs. Gates but that they never visited him unless they wanted something, and that Carrie and Leota were the only ones to whom he intended to leave his property. One witness testified that, at the request of Brown, the former witnessed an instrument at the First National Bank of Normal in 1919. Brown signed the instrument and said it was his will. Another person, whose name the witness did not remember, also witnessed the instrument. Brown had a safety deposit box at the bank. After his death a thorough search for the will was made but none was found.

The testimony is voluminous and it is unnecessary to set it forth in further detail. It is sufficient to say that upon the question of the care and services rendered by Carrie B. Fleming, and the statements of Marshall A. Brown that he had provided in his will for the complainants, the testimony of many persons, professional, business and social acquaintances of Brown and the complainants, preponderates greatly in the complainants' favor. There is nothing to cast doubt upon the credibility of these witnesses and their testimony is practically undisputed. Carrie B. Fleming was administratrix of the estate of Marshall A. Brown. It is admitted that the complainants filed claims in the probate court of McLean county against the estate, but Carrie B. Fleming testified that she filed her claims upon the advice of her attorney, as a legal precaution and protection to her, because a bill could not be filed to secure a determination of the issues here involved prior to the ex-

piration of a year from the date of the issuance of letters of administration. One of the claims of Carrie B. Fleming was for "board, room, washing, personal care and attention of the deceased (Brown) during five years preceding his death, $7950." Carrie B. Fleming and Leota Dee Gates, each separately filed claims against the estate for $3060, based upon two promissory notes, each for $2700, dated June 28, 1934. The same claimants filed a joint claim against the estate based upon a promissory note for $1666.66, dated June 28, 1918, payable to the order of Effie H. Brown and signed by M. A. Brown. Certain proceedings in the probate court to the latter part of November, 1937, appear in the record, but there is no evidence of a final disposition of the claims in question. This suit was instituted on May 21, 1937.

It is contended that the complainants are precluded from maintaining their suit for specific performance by their prior election to pursue an inconsistent remedy. It was not the intention of the complainants, by filing their claims in the probate court, to disaffirm the agreement with Marshall A. Brown, for the affidavit filed by Carrie B. Fleming in support of her claim for her services recites: "Affiant is entitled to recover on a *quantum meruit* for said services to the value of $7950 and for the breach of said agreement to leave her certain of his property she files this claim for services without prejudice to any other remedy she may have on said agreement." She testified that she filed the claim for the purpose of preserving her rights to the extent of the services performed, as specified in the claim. It is the contention of her counsel that, as a matter of fact, it was the intention of the claimant to protect herself upon the express contract so far as she was able so to do.

In *Pillsbury* v. *Early*, 324 Ill. 562, it was held that an express contract for the devise of land sought to be enforced in a chancery proceeding for specific performance is not the same contract as one implied, based upon services rendered, and for which a claim was filed in the probate

court; that the prosecution of a chancery suit would not constitute an election of remedies or operate as an estoppel to bar recovery on a claim filed in the probate court or, thereafter, on a trial *de novo* on the same claim in the circuit court. In support of the rule, *Fletcher* v. *Osborn,* 282 Ill. 143, and *Aldrich* v. *Aldrich,* 287 id. 213, are cited in that decision. If coexistent remedies are consistent with each other, a party may adopt all or select any one which he thinks best suited to the end sought, and only the satisfaction of the claim in one case constitutes a bar of the other. (*Braude* v. *Wardy,* 340 Ill. 180; *Jackson* v. *Industrial Board,* 280 id. 526; *Ridgely Nat. Bank* v. *Patton & Hamilton,* 109 id. 479.) A question somewhat similar to that presented here was raised in *Thrall* v. *Thrall,* 60 Wis. 503. As a defense to an action of ejectment, brought by other heirs of the defendant's mother, the defendant set up an equitable counter-claim to the effect that his mother entered into a contract with him by which she agreed, in consideration of his returning and living on her farm, improving it, providing for the support and maintenance of herself and his father (her husband), during their lives, that the premises should become his sole and separate property. He kept his part of the agreement. It was held that the fact that after his mother's death the defendant, on the advice of counsel, filed a petition for administration and claimed that her estate was indebted to him for the improvements on the farm and for services and expenses in supporting his parents, did not estop him from claiming the land under the contract. The court said: "We are utterly unable to perceive any grounds for estoppel resulting from that proceeding. The defendant testified that he was induced to commence the proceeding in the probate court by advice of counsel, who told him that he could not hold the farm under his contract. This advice he acted upon in filing his petition. But his claim has never been presented, acted upon or allowed by the probate court, and of course has never been paid. It seems too plain to us for discussion that

no principle of estoppel can be predicated on the probate proceeding."

In *Herrington* v. *Hubbard,* 1 Scam. 569, it was held that one could not bring a suit having the effect of disaffirming a contract and subsequently institute a proceeding for a specific performance of the same contract, but that decision specifically recognized the right to proceed concurrently where the actions are not inconsistent. For one proceeding to be a bar to another, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other. (*Marcus* v. *National Council of K. & L. of Security,* 127 Minn. 196.) If the defendants have not been prejudiced by the filing of the claims the mere fact that two suits proceed concurrently is not, of itself, ground for complaint. (*Ridgely Nat. Bank* v. *Patton & Hamilton, supra.*) There was no disaffirmance of the contract by Carrie B. Fleming.. The defendants were not prejudiced by the filing of the claims and the complainants are not barred by the filing of the claims from pursuing a remedy to have the oral agreement specifically enforced.

The defense of the Statute of Frauds is without merit. The evidence sufficiently establishes the fact that there was an oral agreement by Marshall A. Brown to devise his property to the complainants in consideration of the services to be rendered to him. Carrie B. Fleming, at the request of Brown, discontinued teaching school in order to care for him. The evidence discloses that such services were efficiently rendered to the time of Brown's death, and that, in addition, she and her husband had expended their own money for his support. An oral contract, even for the future conveyance or devise of land, is not within the Statute of Frauds if it has been completely performed by one of the parties thereto. The Statute of Frauds, the only purpose of which is to prevent fraud, may not successfully be

interposed as a defense in equity where the effect would be to accomplish a fraud. *Mayo* v. *Mayo,* 302 Ill. 584; *Crawley* v. *Howe,* 291 id. 107; *Gladville* v. *McDole,* 247 id. 34.

It is contended that as Leota Dee Gates was not a party to the oral agreement she had no right to recover thereunder. If one person, for a valuable consideration, makes a promise to another for the benefit of a third person such third person may maintain an action upon the promise, without proof of any consideration flowing from the third person for whose benefit the promise is made. *Carson Pirie Scott & Co.* v. *Parrett,* 346 Ill. 252; *Dean* v. *Walker,* 107 id. 540.

It is contended that the oral agreement was too vague, indefinite and uncertain to admit of specific performance. The evidence was conclusive that the contract was made. Carrie B. Fleming gave not only her time but money for the care of Marshall A. Brown to the end of his life and never received any compensation therefor. The contract was sufficiently definite upon which to predicate the suit for specific performance. *Fierke* v. *Elgin City Banking Co.* 359 Ill. 394; *Willis* v. *Zorger,* 258 id. 574; *Mayo* v. *Mayo, supra; Gladville* v. *McDole, supra.*

One-half the costs were assessed against the defendants. The final contention is that no costs should have been taxed against the defendants. The awarding of costs depends largely upon the facts and circumstances of each case. In a court of chancery it is a matter of discretion with the court and that discretion will not be reviewed except for abuse. *Schroeder* v. *Smith,* 249 Ill. 574; 7 R. C. L. 783, 784.

The contract between Marshall A. Brown and the complainants was performed on the part of the latter. The court did not err in decreeing its specific performance. There is no reversible error in the record.

The decree of the circuit court of McLean county is affirmed.

*Decree affirmed.*