[Civ. No. 9392. Third Dist. Nov. 18, 1958.]

CHARLES E. TINKER et al., Appellants, v. WILLIAM K. McLELLAN et al., Respondents.

Robert K. Stone, Deirup & McKalson and Dorothy D. McKalson, for Appellants.

Hauck & Del Pero, Hewitt & McBride and John T. Kenward for Respondents.

WARNE, J. pro tem.*—This is an appeal from a judgment in favor of the defendants granted by the court sitting without a jury in an action arising out of the alleged breach of a contract to purchase real property.

On October 13, 1955, the respondents William McLellan and his wife, Diane, hereinafter referred to as the McLellans, agreed to purchase certain real property from the appellants for $20,000 subject to the condition that they were able to obtain an FHA loan in the amount of $15,200. The McLellans deposited $2,500 with the respondent Sutter County Title Company, hereinafter referred to as the title company, and thereafter, with the consent of the McLellans the title company released $500 thereof to the appellants. As part of the

---

*Assigned by Chairman of Judicial Council.

purchase price of the property, the appellants agreed to accept a lot owned by the McLellans valued at $2,300. A deed conveying that lot to appellants was deposited with the title company, as was the deed from appellants to the McLellans conveying the subject property. However it may be noted parenthetically that the property which appellants agreed to sell to the McLellans was subject to the lien of a deed of trust which secured a note upon which there was a balance of approximately $9,000 due and owing to the Mid-Valley Saving and Loan Association, which lien was foreclosed during the pendency of this action, so presumably appellants no longer have any interest in the property.

The McLellans entered upon the premises and retained possession thereof until December 23, 1955, when the disastrous flood in Sutter County so damaged the dwelling on the property as to render it uninhabitable. In the interim the McLellans had obtained a conditional commitment on an FHA loan, and pursuant thereto, on December 7, 1955, the respondent Northern Counties Bank, hereinafter referred to as the bank, deposited $15,200 with the title company under authorization for disbursement thereof upon recordation of a deed of trust executed by the McLellans to secure the FHA loan. Under the bank's instructions the title company was to record the deed of trust when it could ". . . cause a ATA Policy with CLTA Ind No 100 form title insurance policy to be issued for not less than $15,200.00, insuring said Deed of Trust to be a lien or charge upon the real property described therein . . ." The authorization was also conditional upon the title company's securing a policy of fire insurance upon the subject property in a sum not less than $15,200. On December 12, 1955, the title company advised the McLellans by letter that the escrow was ready to be closed and would be closed as soon as they paid the amount due from them for various closing costs, totaling $87.92. Although the escrow instructions which the McLellans signed required them to pay these costs they nevertheless questioned their liability for said charges, but thereafter, and not later than December 21, they promised appellants that they would pay the said $87.92. However, the payment was not made, and after the destructive flood of December 23 the bank demanded and received the return of the $15,200 theretofore deposited with the title company. Apparently the title company still holds the balance of the $2,000 deposited by the McLellans and the unrecorded deeds.

The trial court found that title to the property had not passed to the McLellans prior to December 23 when the improvements thereon were materially damaged. Consequently the court found that the McLellans were entitled to the return of the deposit made by them and were also entitled to judgment in the sum of $500 against the Tinkers for the $500 which was released to the Tinkers from the escrow.

On this appeal the issue is stated by appellants as being ". . . whether the risk of loss from flood damage to improvements to real property prior to formal closing of escrow, fell on the seller or the buyer, and the correlative rights and duties of the escrow holder and lending agency in the transaction," all of whom were joined as parties defendant in this action to recover damages for the loss sustained by appellants by reason of the McLellans' failure to complete the purchase.

The Uniform Vendor and Purchaser Risk Act, codified in section 1662 of the Civil Code, provides that when either the legal title or the possession of real property shall have been transferred to the buyer, the risk of loss is upon the buyer unless the contract expressly provides otherwise.

The contract for the purchase and sale of the real property in the instant case is contained in a "Deposit Receipt" signed by the McLellans and an "Acceptance" on the reverse side thereof executed by the Tinkers. That document provides: ". . . if the improvements on said property be destroyed or materially damaged prior to the transfer of title or delivery of agreement of sale, then upon demand of Buyer, said deposit and all other sums paid by Buyer shall be returned to Buyer, and this agreement as between Buyer and Seller shall be of no further effect, and Seller thereupon shall become obligated to pay all expenses incurred in connection with examination of title." If there was either a transfer of title or delivery of an agreement of sale prior to loss, then in view of this provision in the contract the risk of loss would be governed by section 1662 of the Civil Code.

Appellants contend, however, that as a matter of law the McLellans are estopped to claim the benefit of the above clause of the contract since the transaction would have been completed prior to December 23 had the McLellans performed their obligation to pay the closing charges as agreed. We feel that there is merit in this contention.

Although the trial court found that appellants were financially able to pay the charges, it nevertheless was the Mc-

Lellans' obligation under the terms of their escrow and not appellants. Moreover appellants relied upon the McLellans' promise made not later than December 21 that they would make the necessary payments for the closing of the escrow on the following day. Appellants were not in default since they had fulfilled their part of the contract. Their deed to the McLellans was on deposit with the title company and would have been recorded and the title insurance policy issued if they had paid said charges. On December 12 the escrow had advanced to the point that it could be closed upon the payment of said closing charges due from the McLellans. The McLellans admitted at the trial that they knew when they signed the escrow instructions that they were to pay these charges. Had they done so, the transaction would have been closed and the legal title to the subject property would have vested in them. In view of these circumstances, we feel that the loss should fall upon the McLellans and that they are in no position to invoke the rule laid down in *Shreeves* v. *Pearson,* 194 Cal. 699, 711 [230 P. 448] ; *Los Angeles High School Dist.* v. *Quinn,* 195 Cal. 377, 383 [234 P. 313] ; *McCarthy & Myer* v. *Bank of Italy,* 68 Cal.App. 166, 170 [228 P. 724] ; and *Watts* v. *Mohr,* 86 Cal.App.2d 256, 262 [194 P.2d 758], which holds that the terms and conditions of an escrow must be strictly performed. Nor is the case of *Hildebrand* v. *Beck,* 196 Cal. 141, 145-146 [236 P. 301, 39 A.L.R. 1076], controlling herein. There both the vendor and the vendee fully performed but the escrow holder absconded with the purchase price prior to the recordation of the grantor's deed of conveyance. The court held that the vendee must bear the loss as his instructions to the escrow holder authorized the disbursement of the money deposited only when a title guarantee could be secured. Prior to that time no money was held for the account of the vendor. Since the embezzlement occurred during the interim, it was the vendee's money which was embezzled.

Here the McLellans knew that their failure to pay the $87.92 was holding up the closing of the escrow. Appellants had a right to believe that the McLellans would comply with their agreement to pay and especially the oral agreement made not later than December 21 that they would pay on the following day. Appellants had no way of knowing that the McLellans would not comply with their promise. They were justified in relying upon the McLellans' promise. Had the McLellans indicated otherwise, the Tinkers could have instructed the title company to deduct the amount of the costs from the purchase

money which was due them, in which event the escrow would have been closed. These facts show all the essential elements of an estoppel. (See 18 Cal.Jur.2d, Estoppel, § 5.) ██ It is not necessary for the application of this doctrine that the person estopped have a corrupt motive or design. (*Standard Oil Co.* v. *Woolner*, 113 Cal.App. 66 [298 P. 77].) ". . . [D]esigned fraud, or actual fraud in a technical sense, is not essential. All that is meant by the expression that an estoppel must possess an element of fraud is that the circumstances and conduct involved would render it fraudulent for a person to deny what he previously induced or suffered another to believe and take action on . . ." (18 Cal.Jur.2d, Estoppel, § 10.) ██ Since the facts are undisputed concerning the conduct of the McLellans, we feel that their conduct estopped them from relying upon the contract clause placing loss upon the seller, and that the trial court erred in finding for the McLellans.

██ Even if it were held that the McLellans were not estopped, the judgment as to them would have to be reversed. The deposit receipt which constituted an agreement of sale was fully executed and delivered prior to the loss; hence under the very terms of the contract the loss fell upon the buyers. They were only entitled to the return of their deposit if the loss occurred "prior to the transfer of title or delivery of agreement of sale." The loss did not occur prior to the delivery of the agreement of sale. Concerning the remaining respondents, we feel that the title company, as escrow agent, and the bank, and the vendor, respectively, were in no way responsible for the McLellans' failure to pay the closing charges. The escrow charges were due and payable and should have been paid to the title company in order to entitle it to close the escrow. There was no provision in the escrow that the title company should advance these costs, nor was it obligated in any way to do so. After December 23 the title company could not issue nor obtain the title and fire insurance policies upon which the disbursement of the bank's loan was to be made, since the flood had so damaged the subject property as to greatly depreciate its value and also render the dwelling thereon uninhabitable.

The court found throughout the proceedings that the respondent James H. Barr acted as the agent of the respondent title company.

We do not feel it necessary to consider other points argued upon this appeal.

It is ordered that the judgment be reversed as to the respondents William K. McLellan and Diane F. McLellan, and affirmed as to the remaining respondents.

Van Dyke, P. J., and Schottky, J., concurred.