HERBERT GEIST, Plaintiff-Appellant, *v.* ROBERT O. LEHMANN *et al.*, Defendants-Appellees.

(No. 72-176;

Second District—May 29, 1974.

Morrison & Nemanich, of Waukegan (Terrence Brady, of counsel), for appellant.

Conzelman, Schultz, O'Meara & Snarski, of Waukegan, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Herbert Geist, the plaintiff in a suit for rescission of a real-estate contract, appeals from the orders of the trial court which dismissed both his first and second amended complaint and denied his motion for summary judgment on his second amended complaint.

On June 4, 1969, the plaintiff Geist entered into a contract to purchase real estate from the defendant, Robert O. Lehmann. The property consisted of a 20-room Georgian house, a large swimming pool, and a pool house. The house was located upon two lots, all of Lot 7 and the north half of Lot 9. As borne out by the testimony and evidence at trial, the landscape of the property gave the appearance that the front grounds included all of Lot 9. The real estate contract, however, merely gave the address of the property, 500 North Green Bay Road, Lake Forest, Illinois, and only gave the approximate acreage, 3¼ acres.

During the week preceding the date set for closing (October 1, 1969), Geist's attorney first received the legal description, the title-commitment letter, and the survey of the property. After the attorney examined the title, Geist apparently first became aware that the property he was about to purchase did not include all of Lot 9. In a letter to Lehmann's attorney, dated September 29, 1969, Geist's attorney stated that there would be no closing on October 1st and requested Lehmann either to correct the "title defects" or to rescind the contract and return the earnest money. Lehmann's attorney replied in a letter dated September 30, 1969, that it would not be possible to obtain the other portion of Lot 9 and that Geist should be prepared to close on October 1.

On October 1, 1969, Lehmann stood ready to close but Geist did not close the transaction. On October 9, 1969, Geist filed suit for rescission of the contract. Geist based his suit for rescission upon a mistake of a

material fact (the boundaries of the property) which was caused by the innocent misrepresentations of Lehmann and Gilbert Rayner Associates, the real estate brokers. Lehmann filed suit for specific performance and the two suits were then consolidated.

At trial, Geist testified that he was misled as to the boundaries of the property by a plat of the subdivision which was given to him by a realtor, Roberta Lieberman. Mrs. Lieberman had received the plat from Carmin Olson, a real estate broker employed by Gilbert Rayner Associates. Lehmann had earlier contacted Mrs. Olson in order to list the property with Gilbert Rayner Associates. The plat introduced into evidence by the plaintiff showed the Lehmann property included all of Lot 9. Mrs. Lieberman testified that this plat looked like the plat she gave Geist.

This testimony was contradicted by Mrs. Olson who testified that all the plats given to Mrs. Lieberman showed that the Lehmann property included only the north half of Lot 9. Two plats, one which had been in the possession of Mrs. Lieberman and one plat which Mrs. Lieberman had subsequently returned to Mrs. Olson, were introduced into evidence by the defense. Both plats showed Lehmann's property as including only the north half of Lot 9.

Geist further testified that when Mrs. Lieberman showed him the property, she pointed out the boundaries as including both lots. He also testified that neither Lehmann nor Mrs. Olson pointed out to him what the actual boundaries were, even though they both were aware that the property did not include all of Lot 9. Therefore, Geist testified he was misled by the visual appearance of the property. Mrs. Geist also testified that when she visited the property, one of Lehmann's employees was mowing both halves of Lot 9.

Mrs. Lieberman, however, testified she never pointed out the boundaries to Geist. Mrs. Olson testified that she had told Geist a Mr. Fentress owned half of Lot 9. Furthermore, the real estate broker who had helped Geist prepare his offers, testified that when he attempted to explain the boundaries of the property, Geist said, "Look, I know all about the land. Let's not fool around. Let's get this offer in."

All parties agreed that when the property was first listed on the master listing, the stated acreage of the property was 4 acres and the asking price was $225,000. At the time Geist submitted his final offer the acreage was changed to 3¼ acres and the price reduced to $185,000.

Between the time of filing of the complaint for rescission on October 9, 1969, and the commencement of the trial on December 14, 1970, two fires caused extensive damage to the Lehmann house. The first fire occurred in August, 1970, and the second in September, 1970. During the course of the trial, Geist's attorney tried to elicit testimony pertinent to

the fire and the fire damage from the defendant in an effort to prove an additional ground for rescission. Lehmann's attorney, however, objected. After a lengthy discussion, the court and the parties agreed that if Geist should be denied rescission on the grounds of misrepresentation and Lehmann should be granted specific performance, then Geist would be permitted to file an amended complaint for rescission based on destruction of the premises.

On February 8, 1971, the trial court found for Lehmann, dismissing Geist's complaint for rescission and entering judgment for specific performance of the contract. Accordingly, on February 8, 1971, plaintiff Geist filed his amendment to the complaint for rescission. In his answer Lehmann admitted material damage to the premises. On April 14, 1972, Geist filed a motion for summary judgment based on the contractual clause permitting the purchaser to treat the contract null and void if there were material damage of the premises prior to closing.

Defendant Lehmann, however, then filed a petition for the vacation of the decree of specific performance and the reaffirmation of the order dismissing Geist's complaint for rescission. Lehmann set forth allegations of plaintiff Geist's bankruptcy subsequent to the decree of specific performance, of defendant's extensive negotiations with the fire insurance companies, of the companies' position to pay proceeds only to the defendant, and of defendant Lehmann's then present desire to elect forfeiture of the earnest money under the contract. Pursuant to this petition, on April 17, 1972, the trial court entered an order vacating the order for specific performance and reaffirming its order dismissing Geist's complaint for rescission. The court denied Geist's motion for summary judgment and, therefore, permitted Lehmann to elect forfeiture of the earnest mony.

The initial issue before this court is whether the trial court properly dismissed plaintiff Geist's first amended complaint for rescission which was based on plaintiff's mistake due to defendant Lehmann's innocent misrepresentations of a material fact. If the trial court properly dismissed the amended complaint, the issue becomes one of what remedies are available to the seller and the purchaser when the purchaser has delayed the closing and the property is materially damaged after the date set for closing but before the actual closing has taken place.

■■ Rescission of a contract is proper where one party mistakenly enters into a contract because he reasonably relies on the other party's innocent misrepresentations of a material fact. (*Morel v. Masalski* (1928), 333 Ill. 41, 164 N.E. 205.) Certainly, the size and boundaries of the subject property are material facts. (*Winkelman v. Erwin* (1929),

333 Ill. 636, 165 N.E. 205.) Therefore, if plaintiff-purchaser in this case proved at trial that the defendant-seller misrepresented the boundaries of the property to him and he reasonably relied upon these misrepresentations, he is entitled to rescission of the contract.

■■ The evidence as to whether or not the defendant Lehmann and the realtor misrepresented the boundaries of the property to plaintiff Geist, however, is conflicting. In resolving this issue in favor of the defendant, the trial court must have believed the defendant's witnesses and put greater weight on the defendant's evidence. Where a cause is tried by a court without a jury, a determination of the credibility of witnesses and of the weight of evidence is committed to the trial court. Therefore, where the evidence is conflicting we will not disturb the findings of the trial court unless they are manifestly against the weight of the evidence. (*Northern Trust Co. v. City of Chicago* (1954), 4 Ill.2d 432, 123 N.E.2d 330.) "This is particularly true in close cases where the findings must have been dictated to a large extent by the impressions of credibility received by the trial court from the observation of witnesses." *Hunter v. DeMay* (1970), 124 Ill.App.2d 429, 435, 259 N.E.2d 291, 294.

After a careful examination of the record, we conclude that the trial court did not err in dismissing plaintiff's first amended complaint for rescission based on misrepresentation. The finding of the trial court that the plaintiff did not prove his complaint for rescission was not against the manifest weight of the evidence.

■■ After the fire and upon Lehmann's petition, the trial court vacated its order requiring specific performance of the contract. It has long been recognized that when events subsequent to the execution of a contract produce a change of circumstances of such a nature as to cause a peculiar hardship or an inequitable result, a court of equity will refuse to grant specific performance. (*Iglehart v. Vail* (1874), 73 Ill. 63.) Accordingly, in determining whether to grant specific performance of a real estate contract, a court of equity can consider the fact that the property has been materially damaged by fire subsequent to the date set for execution of the contract but prior to the actual conveyance of the property. (See Annot., 11 A.L.R.2d 390 (1950) sections 2, 13.) When property has been materially damaged before its conveyance and prior to the transfer from the seller to the purchaser of any of the incidents of ownership, such as risk of loss or possession, a court of equity will not grant a seller's request for specific performance. See Annot., 11 A.L.R.2d 390 (1950), sections 2, 13.

At the time of the fire, plaintiff Geist did not have any of the incidents of ownership. The risk of loss and possession still remained with the

defendant-seller Lehmann. The parties provided for the risk of loss by inserting the clause.

"if prior to closing, improvements on said premises shall be destroyed, materially damaged by fire or other casualty, this contract at the option of Purchaser shall become null and void."

By using the term "closing" the parties had intended to have the risk of loss pass to the purchaser whenever the sale was closed; that is, when title (and subsequent possession) had passed to the purchaser. The parties did not intend the term "closing" as used in the contractual clause to mean the date set for closing (October 1, 1969). If they had intended to use a specific date in order to determine the time the risk of loss shifts to the purchaser, they would or should have inserted the date in the clause. This reasoning is borne out in clause 7 of the contract which reads "possession shall be delivered on October 1, 1969 provided sale has been closed." This clause clearly shows that both parties contemplated that there could be a possibility of the closing occurring on a date other than October 1, 1969. Since the sale has not been closed and the title and possession have not passed to the purchaser Geist, the seller Lehmann bore the risk of loss at the time of the fire.

While it is true that had it not been for the delay caused by the purchaser Geist the risk of loss would not have been upon the seller Lehmann at the time of the fire, Lehmann was not misled by Geist's actions. Lehmann did not detrimentally rely upon the actions of the purchaser. The purchaser, Geist, informed Lehmann prior to closing that he would not close the transaction. Knowing that Geist would not close, Lehmann could have chosen to place Geist in default of the contract under the contract's provisions. He did not. Instead, he chose to affirm and enforce the terms of the contract by instituting a suit for specific enforcement, and he is therefore bound by those terms which include the risk of loss provision. See *Tinker v. McLellan* (1958), 165 Cal.App.2d 291, 331 P.2d 464.

As the seller Lehmann bore the risk of loss, he may not obtain a decree of specific performance and the court properly vacated such decree. Although the reasons given in the trial court's order vacating the decree for specific performance are incorrect, nevertheless, the order vacating the decree of specific performance must stand. A court of review will not reverse a judgment which is a correct one even if it is based on an incorrect reason. *Shibata v. City of Naperville* (1971), 1 Ill.App.3d 402, 273 N.E.2d 690; *Rosehill Cemetery Co., v. City of Chicago* (1933), 352 Ill. 11, 185 N.E. 170.

We now turn to the issue of what remedies are available to the parties when the subject property has been materially damaged during the liti-

gation. After instituting the suit for specific performance before the fire and obtaining judgment for specific performance after the fire, defendant-seller Lehmann now wants as his remedy forfeiture of the earnest money paid by Geist. Plaintiff-purchaser Geist wants rescission as permitted under the terms of the contract which place the risk of loss upon the seller.

■■■ Geist contends that Lehmann is precluded under the doctrine of election of remedies from seeking the remedy of forfeiture because he has pursued the remedy of specific performance to judgment. He argues that Lehmann's election to pursue specific performance is an election not to pursue other inconsistent remedies. Generally, where a party obtains a decision on the issues but fails to obtain satisfaction of his claim the party is precluded from seeking another remedy when the alternative remedy is inconsistent with the first remedy sought. (See *Braude v. Wardy* (1930), 340 Ill. 180, 172 N.E. 161; *Fleming v. Dillon* (1938), 370 Ill. 325, 18 N.E.2d 910). The remedies of specific performance in equity and forfeiture of a contract are inconsistent remedies. A suit for specific performance is predicated upon the continued existence of the validity of the contract after the breach. The remedy of forfeiture is based upon the disaffirmance of a contract at the time of the breach. See *Wollenberger v. Hoover* (1931), 346 Ill. 511, 179 N.E. 42; *Perino v. Protect-All-Shelters, Inc.* (1970), 128 Ill.App.2d 477, 262 N.E.2d 349; *Solomon Iron & Metal Co. v. Bradford* (1962), 33 Ill.App.2d 452, 179 N.E.2d 697; *Paoli v. Zipout, Inc.* (1959), 21 Ill.App.2d 53, 157 N.E.2d 79.

The doctrine of election of remedies, however, presupposes a choice between two or more existing inconsistent remedies. Accordingly, if a party has but one remedy, a mistaken resort to an unavailable inconsistent remedy will not bar him from later choosing his correct remedy unless the other party has relied on the election of the first remedy. See *Schenck v. State Line Telephone Co.* (1924), 238 N.Y. 308, 144 N.E. 592; *Braude v. Wardy* (1930), 340 Ill. 180, 172 N.E. 161; *Drainage District No. One v. Dowd* (1907), 132 Ill.App. 499; 5 A. Corbin, Contracts §§ 1222, 1225 (1970); 25 Am.Jur.2d *Election of Remedies* §§ 9, 22 (1966). The law will not deprive a party of a meritorious claim merely because he attempts to collect it by inappropriate action. (*Chicago Title & Trust Co. v. De Lasaux* (1929), 336 Ill. 522, 168 N.E. 640.) Thus, courts of equity have granted the inconsistent remedy of damages for a total breach of contract in lieu of specific performance to a party who would have been entitled to specific performance except for intervening events, such as destruction of the property, which rendered the enforcement of the decree of specific performance inequitable or impossible. See *Grummel v. Hollenstein* (1962), 90 Ariz. 356, 367 P.2d 960; *Wimer*

*v. Wagner* (1929), 323 Mo. 1156, 20 S.W.2d 650; 5 A. Corbin, Contracts (1973); § 1222 (1970); 71 Am.Jur.2d *Specific Performance* § 215 (1973); *cf. Alter v. Moellenkamp* (1961), 23 Ill.2d 506, 179 N.E.2d 4.

■■ We find in these situations there is no significant difference between granting the remedy of forfeiture and granting the remedy for damages for breach of contract in lieu of a decree of specific performance. Both forfeiture and damages are remedies for the same breach, *i.e.*, a total breach which put an end to the contract upon the occurrence of the breach. (See 5 A. Corbin, Contracts § 1222 (1970).) The remedy of forfeiture merely sets the amount of damages for the breach before the breach has occurred. Furthermore, while courts of equity do not look upon the remedy of forefeiture with favor (see *Brown v. Jurczak* (1947), 397 Ill. 532, 74 N.E.2d 821), courts of equity will enforce a duly executed agreement containing a forfeiture clause. (See *Powers v. Bridgeport Oil Co.* (1909), 238 Ill. 397, 87 N.E. 381.) Therefore, a court of equity may grant forfeiture in lieu of specific performance to a party who sought but could not obtain specific performance because destruction of the property rendered the decree of specific performance inacceptable or unenforceable. See *Yates v. Batteford* (1932), 19 La.App. 374, 139 So. 37.

■■ In this case, the parties agreed in the contract that in case of a breach by one of the parties, the remedy for such breach would be forfeiture of the earnest money paid rather than the payment of the actual amount of damages. As the destruction of the property has rendered the decree of specific performance unenforceable under the terms of the contract the only remedy for Geist's breach left to Lehmann is the mutually agreed upon remedy of forfeiture of the earnest money. Furthermore, Geist did not detrimentally rely upon Lehmann's suit for specific performance. Geist decided to delay execution of the contract and file suit for rescission prior to the time Lehmann decided to sue for specific performance instead of seeking forfeiture. Accordingly, Lehmann is not barred from seeking forfeiture by the doctrine of election of remedies.

Lehmann is not limited to $2,179.99 damages he proved during his suit for specific performance. Such damages were only incidental to the decree of specific performance. When the order for specific performance was vacated these incidental damages were also vacated leaving Lehmann free to pursue forfeiture as provided in the real estate contract. Under the forfeiture clause in the contract Lehmann is entitled to the earnest money paid.

As Lehmann is entitled to damages for Geist's breach which occurred before the fire, the trial court properly dismissed Geist's second amended complaint for rescission which was based on the destruction of the property, and also properly denied his motion for summary judgment.

For the foregoing reasons, the orders of the trial court dismissing plaintiff's amended complaints, denying plaintiff's motion for summary judgment, and vacating its order of specific performance are affirmed.

Affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.