EVAN WILLIS, Appellant, *vs.* CHARLES K. ZORGER *et al.* Appellees.

*Opinion filed April 19, 1913—Rehearing denied June 4, 1913.*

1. SPECIFIC PERFORMANCE—*when a verbal ·contract concerning land should be enforced.* Where a verbal contract by which the owner of land agrees to give it to another person if the latter will stay on the farm and work it as the owner desires, as long as the owner lives, is clearly proved and is carried out by such person by living on the farm and working it for forty years, until the owner's death, a court of equity will decree specific performance, where it is clear that to deny such relief would be most inequitable and unjust.

2. SAME—*what is sufficient proof of verbal contract.* While a verbal contract concerning land must be proven by clear and satisfactory evidence yet direct proof is not essential, and if all the facts, including the acts and declarations of the parties, satisfy the court that the terms of the contract have been established and that the complainant has performed his agreement the contract should be enforced, even though it does not appear that either party stated the contract to any witness when both the parties were together. (*Geer* v. *Goudy*, 174 Ill. 514, and *Vail* v. *Rynearson*, 249 id. 501, distinguished.)

VICKERS, J., dissenting.

APPEAL from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

HERRICK & HERRICK, for appellant.

WILLIAM MONSON, L. O. WILLIAMS, FRED BALL, and STONE & GRAY, (JOHN FULLER, guardian *ad litem,*) for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a bill filed in the circuit court of DeWitt county by Evan Willis against the heirs-at-law of Jacob K. Zorger, deceased, to enforce an oral agreement alleged to have been made between Zorger and Willis whereby Zorger contracted to give a 485-acre farm in DeWitt county to Willis. After the pleadings were settled, testimony was taken before a master and reported to the court. Upon a hearing the bill was dismissed for want of equity, and this appeal followed.

The contract sought to be specifically enforced is set out in the amended bill in the following words: "The said Jacob K. Zorger promised the complainant that if he would stay upon said premises and look after and care for the same and do the work which he desired done upon said farm as long as he, the said Jacob K. Zorger, should live, then at the death of him, the said Jacob K. Zorger, he, the said Zorger, would give to the complainant for his services, as aforesaid, the real estate hereinbefore described and upon which the complainant then and there resided."

The record shows that Zorger was a bachelor and left no heirs except two brothers and the descendants of certain deceased brothers and sisters; that he died as the result of an accident in the year 1910, eighty-six years of age, never recovering consciousness after his injury; that the appellant was his nephew and was sixty-four years of age at the time of Zorger's death; that the latter died seized of about 1100 acres of farm land in DeWitt county and several thousand dollars' worth of personal property. The evidence tends to show that the appellant came from his home in the east at the request of Zorger in 1870 and commenced to work for the latter as a farm-hand upon 285 acres of the farm now in question, which was then owned by Zorger; that he continued to so work until 1876, when he rented the farm; that after he had farmed the place for about a year he entered into a partnership with Zorger whereby he was to live upon the farm and carry

it on, and he and Zorger were to raise stock, (cattle and hogs,) feed the grain and hay raised thereon and pasture the grazing land and divide the profits and the increase of stock; that during the years immediately following, Zorger purchased, at various times, land immediately adjoining the 285 acres and added to the farm run by Willis, to be used for feeding, stock raising and pasture by the parties; that Zorger furnished most of the capital that was used in the stock business, and that they kept during many years some hundred head of cattle and frequently as many as two hundred head of hogs; that they bought large quantities of corn, which was fed to the stock on the farm; that Zorger did most of the buying, shipping and selling and handling of the money, the expenses of the farm frequently being paid by Zorger by checks, upon orders drawn by appellant; that appellant worked very hard on the farm from early morning until late at night, in all kinds of weather. The decree of the circuit court found that all of these facts had been proved, and in addition found that at the time the appellant took possession of said premises they were grown up with brush, undergrowth and small timber, poorly fenced and but little improved, and that appellant had cleared said land of said brush, undergrowth and small timber and had fenced and improved the premises and brought the same into a high state of cultivation as a grain and stock farm; that appellant seldom had any money and that his living expenses were usually paid by orders drawn by him on Zorger; that Zorger expressly stated to many persons that he had promised to convey to appellant all of the lands in question under and by virtue of an arrangement or contract between the said Willis and the said Zorger, by the terms of which said Willis was to live upon and care for the said premises as long as Zorger should live and that at the latter's death said premises were to belong to Willis; that Willis had remained in possession of the 285-acre tract from the time he went into possession, in 1877,

under the agreement in question, and remained in possession of the other tracts composing the 485 acres from the time they were purchased by Zorger until the latter's death. The court further found that by reason of said agreement or arrangement, as set out in said amended bill, not being proven or established by the testimony of any witness or witnesses who had heard said Willis and Zorger state the terms of said arrangement, agreement or contract in the presence of each other, therefore said contract, agreement or arrangement had not been satisfactorily proven or established.

It is very evident from the findings in the decree that the chancellor dismissed the bill for want of equity, not because he believed the evidence did not disclose that such a contract as alleged in the amended bill had been made between Zorger and Willis, but solely because the testimony did not show that such agreement, contract or arrangement, or an extension or renewal, had been stated by either of them to any witness when they were together or by someone in their presence and with their assent. Counsel for appellees contend that the holdings of this court are in accord with this finding of the decree, citing, among other cases, *Worth* v. *Worth,* 84 Ill. 442. In that case this court stated (p. 443) : "While we do not hold that a case may not be made out by proof of the declarations of a person, there are, however, respectable authorities that go that far; yet we are not satisfied that the evidence in this case is of that clear, definite and satisfactory character that it should be to require a court to compel, by decree, the conveyance of land." The above was quoted with approval by this court in *Standard* v. *Standard,* 223 Ill. 255. In addition to these authorities counsel for appellees rely upon *Geer* v. *Goudy,* 174 Ill. 514. In this last case the alleged oral contract in question was between a father and a son, and the court, after stating that a court of equity would not enforce a gift of land by a father to his son unless the gift

258 – 37

had been acted upon by taking possession and by the expenditure of money in the making of improvements with the knowledge and consent of the promisor, stated that all the authorities agreed that such a promise might be established by proof which was clear, definite and unequivocal, and that "mere declarations made by the promisor or donor to third persons do not constitute such clear, definite and unequivocal testimony." It was further stated that the contract between father and son, from the nature of the relation, was required to be proved by evidence different from that which might be required between strangers. Clearly, what was said there was intended to apply to the facts of that case as to an oral contract between parent and child. Counsel also cite *Vail* v. *Rynearson,* 249 Ill. 501, where an oral contract in question was entered into between an aunt and a nephew. In that case there was direct evidence by three witnesses as to the making of the contract, or sanctioning it thereafter, between the parties thereto. In commenting upon the other evidence in the record we said (p. 507) : "Such a contract as was alleged must be clearly proved and no doubt must be left as to its terms. If the proof of the contract rested upon declarations of Mrs. Harris in the absence of the complainant they would be insufficient, and it is equally true that if there was a contract any declarations made by her in his absence would not bind him." This is undoubtedly correct. The declarations made by one party as to a contract with another person cannot bind the latter unless he agrees thereto. It is not said in that case that the second party could not be bound if he had agreed to the contract, even though there was no direct evidence by anyone that the contract had been stated by either party to any witness when both parties were present. While an oral contract of this kind, and all of its terms, must be clearly and satisfactorily proven, we think the weight of authority is that such a contract may be proved by other than direct evidence; that where the facts, includ-

ing the acts of the parties, raise a convincing implication that the contract was actually made, and satisfy the court that its terms and provisions are sufficient to justify its enforcement, it should be upheld. (36 Cyc. 689, and cases cited.) In *Allison* v. *Burns*, 107 Pa. 50, it was held that where the contracting parties were not parent and child such a contract might be proved by the acts and declarations of the parties, either together or separately. See, also, *Loney* v. *Loney*, 86 Md. 652; *Wright* v. *Wright*, 99 Mich. 170; *Karren* v. *Rainey*, 30 Utah, 7; *Bevington* v. *Bevington*, [Iowa] 110 N. W. Rep. 840.) Fairly construed, we think the decisions in this State uphold this rule.

Is the competent evidence in this record of such a nature as to prove definitely, clearly and unequivocally the terms of this contract? Some thirty witnesses swore to having heard Jacob K. Zorger, during the last fourteen to sixteen years of his life, say he intended Willis to have the farm, and many of them, going farther, testify that he stated he had arranged with Willis to remain on and care for the premises in question as long as he (Zorger) lived, with the understanding that if Willis did so said premises were to be conveyed to him or were to be his when Zorger died. One witness testified that Zorger stated that he owned the farm but was going to deed it to Willis before he died; another, that Zorger stated that Willis had been a good friend to him and had worked hard on the place, and he calculated for him to have the farm when he (Zorger) was done with it; another, that Zorger said he was going to leave Willis the farm some time; another, that Zorger stated that Willis had done a lot of hard work out there, and "I expect some day that place to be his;" another, that Zorger said he intended to make a deed to Willis for the land when he (Zorger) was dead, if Willis stayed on the farm as long as he (Zorger) lived; another, that Zorger said Willis "don't own the farm yet, but I calculate to give it to him;" still another, that he talked with Zorger, about

a year before his death, about putting some fence on the farm, and that Zorger replied, "The place belongs to Willis after this year; he will have to keep up the fence." Another witness testified that in 1908 he tried to rent some of this land from Zorger, and that after he had made a partial arrangement therefor Zorger told him that he (witness) would have to let him off because Willis was out of humor about it; that he had a contract with Willis that if he stayed with him as long as he (Zorger) lived he (Willis) was to have the place; that as a result the witness did not rent the land from Zorger. Another witness stated that he talked with Zorger about renting the farm, and that he said he would rent him another farm but would not rent him that farm, as he had made arrangements with Willis that he was to stay on it during his lifetime, and that he would rent it to nobody. Another witness testified that he had a conversation with Zorger in 1909 with reference to buying 80 acres of this land, and that Zorger told him that was the best farm land he had; that he would let him know whether he would sell it; that in a few weeks witness again met Zorger and the latter told him he could not sell the land,—that Willis would get mad and he was afraid he would lay down on his deal; that he had promised Willis the farm at his (Zorger's) death and he would not sell any of it. Another witness testified that in 1901 he built a house on the farm in question for Zorger and that the latter was present when the site was being chosen; that there was a dispute between Zorger, Willis and the latter's wife as to where the house should be located, and finally Zorger told the witness to put the house where Mrs. Willis wanted it; that he intended them to have the farm when he was dead. Mr. and Mrs. Willis were both present at the time of this conversation. Two of the witnesses heretofore referred to as testifying with reference to renting the farm, stated that after talking with Zorger they went and talked with Willis, and that he told them that he had

a contract with Zorger about the farm substantially as alleged in the amended bill, and that thereafter they repeated this conversation with Willis to Zorger and that Zorger said that was correct,—that he had such a contract. Another witness overheard, a year or two before Zorger's death, a discussion between Zorger and Willis about the farm, and testified that Zorger, a few minutes after Willis left, stated to witness, "I think I ought to have something to say about the farm even though it does belong to Willis."

Without question the testimony shows that Zorger had planned for many years that at his death this farm was to be appellant's provided the latter carried on the farm as long as he (Zorger) lived. True, the testimony of some of these witnesses might be characterized as general statements of Zorger, insufficient, in themselves, to sustain a verbal contract for this land, but not all of these declarations are of that character. They are definite and specific, made on occasions when it was most natural and reasonable that they should be made by Zorger in explanation of his acting as he did. .

The alleged contract was verbal, and such contracts must be proved clearly, definitely and unequivocally by competent evidence, but when so proved, verbal contracts that are partly performed in reliance thereon can be enforced in equity. The ground upon which this remedy rests in such cases is that of equitable fraud. (4 Pomeroy's Eq. Jur.—3d ed.—sec. 1409.) In equity "the rights and duties of the parties are the same as they would have been if the contract had been written and signed, and unless the one who has performed the contract in good faith can be made whole in damages he is left without any adequate remedy at law, and equity will compel the other party to do the thing which was agreed to be done." (*Gladville* v. *McDole*, 247 Ill. 34.) There is no adequate remedy at law for appellant if the evidence in this record sustains the allegations of the bill. He has fully carried out his part of the con-

tract. He could not recover at law, because of the Statute of Limitations, for his labor during many years of this service. The evidence discloses that these services were worth at least $100 a month, and that such services, during all of the years since the contract was made, at that rate amount approximately to what the land in question is now worth, that being about $100 an acre.

Counsel for appellees contend that the evidence in this record is more consistent with the theory that appellant was a tenant of Zorger than that he farmed the land under the agreement, as alleged in the amended bill. The evidence in the record offered by them tending to support this is the fact that Zorger had this land in his name at the time of his death and paid the taxes; that the orders drawn by Willis upon Zorger generally stated that they should be charged to his (Willis') account, and that the stock on the farm during the years previous to Zorger's death was assessed jointly to Zorger and Willis. The evidence, as we have stated, shows clearly that Willis had very little cash during all these years; that the orders he drew on Zorger which were paid by the latter, all told, as found in the record, amounted to less than $2000. No one testifies to any statement made by Zorger during his lifetime which even tended to show that the contract alleged in the amended declaration did not exist between him and appellant. On the contrary, all of his statements as testified to, and substantially all the other evidence in the record, is more consistent with the allegations of the bill than with the theory contended for by appellees.

Counsel for appellees insist that an agreement introduced by them, dated March 25, 1884, by which appellant agreed to work for Zorger for eight months, doing any kind of farm labor "in his farm," for $200, nothing further being said as to the land upon which the farm labor should be performed, is so inconsistent with the claim of appellant that he ought not to recover. Appellant himself is pre-

vented by law from testifying in this case as to the con-
tracts, if any, that he made with Zorger. The evidence
in the record tends to show that a year or two before the
date of this contract he and Zorger had litigation with a
neighbor over the killing of some sheep by dogs kept on
this farm; that these dogs were assessed on the tax books
to Zorger and Willis. The testimony further shows that
this litigation was finally settled by Zorger and Willis pay-
ing certain amounts to the neighbor in question. There is
also some evidence tending to show that Zorger entered into
this contract with Willis so that the plaintiff in that damage
suit could not, if he obtained judgment, levy on the land
in question. Whatever may be the facts as to this, the al-
legations of the amended bill are that the agreement made
between Zorger and Willis was renewed, extended, en-
larged and amplified from time to time as additional land
was purchased after the original contract was entered into.
It appears that one tract belonging to the 485-acre farm
was purchased as late as 1893, that another was purchased
in 1886, another in 1887 and still others in 1890. The evi-
dence shows that as soon as these various tracts of land
were purchased they were farmed by Willis under what-
ever agreement he had with Zorger as to the other land.
All the testimony with reference to Zorger's statements
made after 1894 (and most of the testimony was as to
statements made after that date) referred to the entire farm
of 485 acres. In view of the allegations of the bill and
the proof referring to the statements of Zorger confirming
the agreement long after all of the 485 acres was being
farmed by Willis, it appears that whatever agreement ex-
isted was understood by both Zorger and Willis as applying
to all this land. Whatever may have been the reason for
entering into said contract of 1884 between Zorger and
Willis, we think there is ample evidence of a contractual
relation existing between Zorger and Willis for years prior

to Zorger's death, in accordance with the allegations of the amended bill.

Counsel for appellees further argue that the fact that the evidence in the record showed that Mrs. Willis, the wife of appellant, was dissatisfied with whatever agreement existed between appellant and Zorger was inconsistent with the claims of appellant. This evidence, in our judgment, has little weight either way, but it is fully as consistent with the allegations of the bill as it is with the theory contended for by appellees. It might well be argued that Mrs. Willis was dissatisfied with Zorger because he did not execute some paper showing the agreement existing between Zorger and Willis.

It is further argued by counsel for appellees that the description of the property is not sufficiently definite to justify a decree of specific performance. There can be no question from this record that appellant farmed and had possession of all of the 485 acres of land here in question at the time of Zorger's death and remained there until the filing of this bill. All of the statements made by Zorger in the last years of his life with reference to the contract between him and Willis clearly referred to this 485-acre farm. The descriptions of the land in the allegations of the bill are accurate, and the proof, in our judgment, supports these allegations.

None of Zorger's relatives other than appellant appear to have had any business dealings with him. What more natural, under the circumstances, than that he should have planned and agreed to give this farm to his nephew, who had been associated with him in business for forty years?

We think the weight of the evidence is to the effect that Willis was conducting the farm on the terms and conditions of the contract as alleged in the said amended bill, with the full knowledge and understanding of Zorger that he was so doing and with the latter's sanction and approval. The evidence tends to show that the investment of the

money which was put into the additional lands that were purchased and became a part of this farm after 1886 was made possible by the labor and services of appellant. Now, in his old age, to deprive him of the fruits of his labor by refusing to carry out the contract in question would be most inequitable and unjust. The decisions of this court in *Warren* v. *Warren,* 105 Ill. 568, *Anderson* v. *Manners,* 243 id. 405, *Dalby* v. *Maxfield,* 244 id. 214, and *Gladville* v. *McDole, supra,* on facts somewhat similar to these, fully justify this conclusion.

Most of appellees herein did not, by their answers to the amended bill, raise the question that this contract was invalid as against the Statute of Frauds. A contract resting in parol may be enforced unless the party against whom its enforcement is sought pleads the Statute of Frauds. (*Clayton* v. *Lemen,* 233 Ill. 435, and cases cited; *Domeracki* v. *Janikowski,* 255 id. 575.) But certain of appellees are minors and the court must regard that defense as pleaded by them. (*Pinkney* v. *Weaver,* 216 Ill. 185.) We have therefore discussed the evidence as if the Statute of Frauds had been pleaded.

If there was a contract as alleged,—and we consider that there was,—it has been fully performed by appellant, and from this record we are compelled to conclude that he could not be recompensed for his long years of service except by the specific performance of this agreement.

The decree is reversed and the cause remanded to the circuit court, with directions to enter a decree in accordance with the prayer of the amended bill.

*Reversed and remanded, with directions.*

Mr. JUSTICE VICKERS, dissenting.