(No. 11439.—Decree affirmed.)

MARCUS S. WRESTLER *et al.* Plaintiffs in Error, *vs.* ELLSWORTH TIPPY *et al.* Defendants in Error.

*Opinion filed October 23, 1917.*

1. SPECIFIC PERFORMANCE—*contract to convey must be definite and unequivocal in terms.* The complainant in a bill for specific performance of a contract to convey must prove a contract that is clear, definite and unequivocal in its terms.

2. SAME—*contract to convey cannot be proved by mere declarations of one party not binding on the other.* While a contract to convey may be proved by the declarations of the parties made out of the presence of each other, together with other acts of the parties which show such an agreement was made, yet it cannot be established by mere declarations of one party which are not binding on the other.

WRIT OF ERROR to the Circuit Court of Fulton county; the Hon. HARRY M. WAGGONER, Judge, presiding.

W. SCOTT EDWARDS, (MARVIN T. ROBISON, of counsel,) for plaintiffs in error.

HARVEY H. ATHERTON, for defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Plaintiffs in error, Marcus S. Wrestler, individually and as administrator of the estate of Clara E. Wrestler, deceased, and Nelson C. Wrestler, Elzie Wrestler and Lawrence Shores, by J. M. Laws, their next friend, filed their bill in chancery in the circuit court of Fulton county against defendants in error, Ellsworth Tippy, individually and as executor of the last will and testament of Abram Leonard, deceased, Amos Howe, Joseph Beaty, Melvin Beaty, John Lockard, Clayton Kingery and Frank Slate, trustees of Hickory cemetery, and Charcy Hendee, Leonard Hendee, Carl Leonard and Mrs. Jane Azbell, to enforce the specific performance of a contract alleged to have been made in November, 1911, between Abram Leonard and Marcus S. Wrestler and Clara E. Wrestler, by which Leonard agreed, in consideration of past services, care and· attention given to him by said Wrestlers since 1906 and the removal of the said Wrestlers to his home and staying with him during the remainder of his life, that he would convey to them 91.84 acres of land situated in sections 6, 31 and 32, in township 3, north of range 3, in Fulton county, and all of his personal property, as compensation for such services. The bill further alleges that in pursuance of such contract said Clara E. Wrestler left her home on November 3, 1911, and went to the home of said Leonard and remained there and nursed him day and night until his death, on or about the 26th day of April, 1913. Defendants in error answered the bill, admitting Leonard was the owner of the property in question but denying the making of the contract. Replications were filed to the answer and the cause was heard before the court. On the hearing, Ellsworth Tippy, as executor, obtained leave to file, and did file, a plea setting up the Statute of Frauds. At the conclusion of the hearing the court found the issues in favor of defendants in error and dismissed the bill for want of equity, without prejudice

to the rights of any of plaintiffs in error to recover damages from the estate of the said Leonard at law, and taxed the costs to plaintiffs in error. This writ of error has been sued out to review the decree of the lower court.

Abram Leonard, the deceased, was the owner of the land in controversy and for some years before his death had been living by himself in a house on the land. Clara E. Wrestler, now deceased, was his sister. She lived with her husband, Marcus S. Wrestler, in a small house some distance from the residence of Leonard. Leonard was somewhat given to the use of intoxicating liquors and at times would become practically helpless from its use, and during such times Mrs. Wrestler and husband would be sent for ·and come to his home to take care of him. This condition continued from some time in 1906 until in November of 1911, when Wrestler and his wife gave up their home and moved to the Leonard residence, where they continued to reside with him until his death.

There is no direct evidence as to the alleged contract or its terms and conditions. The only proof on this question is casual statements made by the deceased to his neighbors at different times to the effect that he wanted the Wrestlers to come and take care of him and to have his property at his death. None of these statements appear to have been made by him in the presence of either of the Wrestlers. Carl Krebaum testified Leonard told him he was getting old and feeble and was going to try and get his sister and Wrestler to come and take care of him; that at another time he told him that the Wrestlers were going to move in there and take care of him; that he had made arrangements with them and was going to Lewistown the next day to see Barnett and have papers drawn up to that effect; that he was going to leave what he had to them when he got through and they were going to take care of him the rest of his life. Another witness, Moses Mahan, testified the deceased told him that Wrestler and wife were

going to move in and stay with him the rest of his days and he was going to give them what he had, and that after they moved in Leonard told him he felt more like he was at home and was better satisfied; that they intended to stay there as long as he lived and that he was going to give them what he had at his death. Another witness, Elmer Town, testified that the deceased told him Wrestler and wife had moved in with him and were going to stay with him and at his death he intended Clara to have what he had. Another witness, Martha Tippy, testified that the deceased told her that he intended to let them (meaning Wrestler and wife) have everything he had if they would move in and take care of him. Another witness, Israel Shawgo, testified to a conversation with Leonard after Wrestler and wife moved, in which the deceased told him he expected Clara to get everything he had; that this conversation occurred not a great while before Leonard's death; that at another time Leonard told him he had been trying to get Mark (meaning Wrestler) to move in there and guessed he would; that Mark's wife was willing to move but that Mark hung back and did not want to, but he guessed Mark had about given up to move, and that he intended to give Clara everything he had at his death. Another witness, Alonzo Krebaum, testified that the deceased told him he had been trying for some time to get the Wrestlers to move in, and that he thought they would take care of him as long as he lived, and that they ought to, as he was giving them the place. Another witness, James Tippy, testified that Leonard told him that Wrestler and his wife were going to move in there and he was going to pay them a dollar a week for his board.

The foregoing is the substance of all of the testimony offered as to declarations and statements made by the deceased tending to show the alleged contract which was the basis of the suit by plaintiffs in error. In so far as Leonard's physical condition was concerned, the evidence shows that while he used intoxicating liquor to excess at times,

and at such times required care and nursing, these periods were only periodical and of short duration, and that at all other times Leonard was perfectly able to take care of himself until a very short time before his death.

The evidence on the part of defendants in error shows that Wrestler, wife and family were living in a small house on a ten-acre tract of land on what is called the Turkey branch, some distance from Leonard's home. The Leonard home was much better than that occupied by the Wrestlers. Leonard required very little care or attention until a short time before his death, except when under the influence of liquor. He was able to care for himself and transact his ordinary business and affairs. After the Wrestlers came to live with him he rented them the property and kept a book account of his dealings with them, in which they were charged with various sums of money advanced to them. On March 14, 1913, he made his last will and testament, by which he disposed of all of his property, leaving a life use of a part of it to Ellsworth Tippy and the life use of another part of it to Charcy Hendee, and upon their death to their children for life. The will provides that upon the expiration of such life tenancy the property shall go to the trustees of Hickory cemetery in trust for certain purposes therein set forth, and directs that his household goods shall be divided equally between Carl Leonard and Leonard Hendee, and that all the residue of his personal property shall be divided equally among Carl Leonard, Leonard Hendee, Jane Azbell and Clara E. Wrestler. The evidence shows that after Leonard's death Clara E. Wrestler caused a claim to be filed in the county court in the matter of the estate of said Leonard for $4215 "for labor, keeping house, washing and keeping watch from November 3, 1911, to April 26, 1913, $5 per day and night;" and that Marcus S. Wrestler also filed a claim for $2100 "for 420 days' labor taking care of Abram Leonard when intoxicated, from April 28, 1908, to November 3, 1911, night and day, at $5 per day," which

claims were subsequently withdrawn by the claimants before the hearing.

The rule established in this State is that where a contract to convey land is relied upon, the burden is on the complainant to prove a contract that is clear, definite and unequivocal in its terms and provisions. While such a contract may be proven by the declarations of the parties made not in the presence of each other, together with other acts and conduct of the parties which show such an agreement was made, it cannot be proven by the declarations or acts of only one party to the alleged contract not binding upon the other. (*Kane* v. *Hudson,* 273 Ill. 350.) In the instant case the declarations proven wholly fail to establish any contract binding upon any of the parties, and amount to no more than the mere expression of a present intention and desire that Wrestler and wife should have the property at Leonard's death. They were of a character from which the Wrestlers might well expect to be made favored beneficiaries under his will but are lacking in all of the essential requirements of a definite present contract to give or convey his property to them in the future in consideration of their caring for him until his death. The act of Wrestler and his wife, also, in filing claims against his estate for labor and services of a character which would have been included in the alleged contract of the deceased is so inconsistent with the making of any definite and clear contract of the character sued on as to detract very materially from the weight to be given to the casual remarks made by the deceased to his neighbors and friends expressive of his intention to give his property to the Wrestlers.

As we are of the opinion that the evidence fails to show a contract as charged in the bill of complaint, it is unnecessary to consider the other questions raised.

The decree of the circuit court will be affirmed.

*Decree affirmed.*