(No. 30520.—

NAOMI HOLMES, Appellee, *vs.* DON ACKLEY *et al.,* Appellants.

*Opinion filed May 20, 1948—Rehearing denied September 15, 1948.*

CHARLES L. RICE, and DAVID V. LANSDEN, both of Cairo, for appellants.

D. B. REID, of Cairo, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is a suit in chancery filed in the circuit court of Pulaski County by Naomi Holmes, appellee, against the heirs of Mae Bourgois, deceased, for the specific performance of an alleged oral contract between the deceased and herself by which the former agreed to devise to appellee 10 acres of land in said county. The complaint, as finally amended, alleged that on December 25, 1944, Mae Bourgois, then of the age of 56 years, in failing health, and being without assistance, society or companionship agreed with and promised appellee, who was then unmarried and 33 years of age, that if she would come to her home, care for and be a companion to her for the rest of her life, she would devise to appellee the property above mentioned. It was alleged that appellee accepted and fully performed the agreement and that on September 8, 1945, Mae Bourgois employed an attorney to draw up a will for her in accordance with, and in performance of, the alleged contract, but before the will was written she died on September 9, 1945, without performing her part of the contract.

John Barnett, who purchased the interest of two of the heirs pending the litigation, was allowed to intervene and become a defendant. In answering the complaint the de-

fendants denied there was ever any contract made as alleged and denied specific performance by appellee as alleged. They also pleaded the Statute of Frauds as a defense. The cause was heard before the court and judgment rendered in favor of appellee decreeing specific performance.

The record discloses the property had been the home of Mae Bourgois and her husband, George Bourgois, for a period of about 15 years and was owned by them in joint tenancy. The husband died December 3, 1944, and thereupon Mrs. Bourgois became the sole owner and was such owner at the time of her death. Her heirs were two half brothers, Don and Fred E. Ackley, and a niece, Helen Keesee. Naomi Holmes, the appellee, was a step-granddaughter of Mrs. Bourgois.

The proof relied upon by appellee to establish the making of the contract and its performance on her part is the testimony of her father, Elmo Pearman, and that of Gladys Klavesahl, Buelah Woolridge and Dorothy Wilbourn Spomer.

Appellee's father testified that the condition of Mae Bourgois' health during the last 6 or 8 months of her life was poor; that in the latter part of December, 1944, or the early part of January, 1945, he had occasion to talk with Mae Bourgois relative to someone taking care of her; that she had been at his house for about one and a half months, where he had taken her, when she asked to be taken home; that he had a conversation with her in her home in which she said she wanted him to go see Naomi Holmes, his daughter, who was working in Cairo and she said, "I want her to come stay with me the rest of my life, and I will give her my home." He further testified, "I did see Naomi, and she told me she would go and take care of her. She did go. I visited in the home frequently while Naomi was there with Mae. Mrs. Bourgois' health was bad when Naomi was there. She stayed in bed practically all of the time. Naomi nursed her and took care

of her, kept house and did scrubbing, washing, cooking and got her medicine for her. This relationship continued from the time Naomi went there until Mae passed away." Mrs. Bourgois further told the witness that she had tried to get her relatives to take care of her, had written them several letters but they refused.

Gladys Klavesahl testified that Mae Bourgois said to her many times that she wanted her property to go to Naomi for her care, that she made this statement practically every time the witness talked to her; that the first time she said this was the day her husband, George Bourgois was buried. She further testified that Naomi stayed with Mae, did the housework and took care of Mae when she was sick and not able to be up; that she was there the morning they were getting ready to take Mae to the hospital and Mrs. Bourgois asked her to stop and notify Miss Wilbourn, the attorney, to come out there because she wanted to make her will and wanted Naomi to have everything.

Beulah Woolridge testified that in 1945 she was working at Keller's Coffee Shop in Cairo; that Naomi worked there three months during that time and then quit to take care of Mrs. Bourgois; that she visited in the home after Naomi went there and Naomi would be doing the housework and looking after Mrs. Bourgois; that she had conversations with Mrs. Bourgois with reference to disposition of her property and Mrs. Bourgois always said she wanted Naomi to have her home; that she said if Naomi stayed with her until she died she wanted her to have everything.

Dorothy Wilbourn Spomer, a practicing attorney, testified that on September 8, 1945, she was called to the home of Mae Bourgois; that Mrs. Bourgois said she wanted to make a will and wanted to leave her home to Naomi Holmes; that she said, "I want to leave my home to the girl," and I said, "Whom do you mean?" And she

said, "To Naomi Holmes, she has been good to me." A memorandum was made accordingly and Mrs. Bourgois told the witness to draw the will up on Monday and bring it to the hospital. Mrs. Bourgois was taken to the hospital that afternoon and died the following day before the will was drawn up and executed.

The evidence adduced by the defendants consisted in the main of witnesses who testified to seeing the appellee at places other than the home of Mae Bourgois. This evidence, no doubt, was offered for the purpose of showing that Naomi Holmes was not at the home of Mrs. Bourgois all of the time and therefore such evidence would refute the testimony of witnesses that she was there taking care of Mrs. Bourgois during her illness in accordance with their agreement.

One witness testified that from March 15, 1945, until June 20, 1945, Naomi Holmes worked for him at Cairo, as a waitress in his restaurant. Another testified that appellee rented a room from her in March, 1945, and lived there until sometime in the following July. A witness by the name of Helen Morris testified that she and her children stayed with Mae Bourgois in her home from January 24 until March 4 and that appellee was never there.

It will be observed these witnesses testified as to the early part of 1945 and their testimony did not cover any time from the middle of the summer up to the time of Mae Bourgois' death. It is significant that one witness for the defendants, Glenn Jackson, who was manager of a nearby tavern, testified that Mrs. Bourgois visited the tavern nearly every day until a few days before she died and that Naomi was there with her about a dozen times. This would indicate that much of the time she was in company with Mrs. Bourgois.

We are of the opinion the evidence as disclosed by the record sufficiently establishes that there was an oral agreement between the appellee and Mae Bourgois, and fully

discloses that pursuant to this agreement the appellee performed services and conferred benefits upon Mae Bourgois until her death. It is true it is the duty of courts of chancery to scrutinize with scrupulous care the evidence offered to prove an oral contract to make disposition of the property of a decedent different from that prescribed by the laws of descent. (*Hickey* v. *Hickey*, 374 Ill. 614; *Anderson* v. *Augustana College*, 300 Ill. 72.) But where the proof upon which the conveyance is asked is so clear and conclusive that it leaves no reasonable doubt of the existence or terms of the contract, it will be enforced. As we said in the case of *Rigolio* v. *Knopf*, 390 Ill. 258, "The test in this case is whether the testimony measures up to the rules announced by this court in specific performance cases. In *Anderson* v. *Augustana College*, 300 Ill. 72, at page 80, we said, 'Contracts which a court of equity will specifically enforce must be fully and completely proved and their terms must be shown with certainty. Courts of equity scrutinize with the most scrupulous care the evidence offered in support of a contract to make a disposition of the property of a deceased person different from that which the law prescribes. (*Sloniger* v. *Sloniger*, 161 Ill. 270; *Woods* v. *Evans*, 113 Ill. 186.) The proof which will justify a court in decreeing specific performance of a parol contract must be clear and conclusive, and there must be no reasonable doubt that the contract was made and all of its terms clearly proved. (*Mould* v. *Rohm*, 274 Ill. 547; *Reynolds* v. *Wetzler*, 254 Ill. 607; *White* v. *White*, 241 Ill. 551.)' "

The evidence as offered by appellee in this case clearly shows that she performed considerable services for Mae Bourgois and that she was in her home a considerable length of time before her death, that when she was asked to come and assist in taking care of Mrs. Bourgois on consideration that the property in question would be deeded to her for such services, she left the place where she was

residing in Cairo and came to the home of the deceased to take care of her; that she did perform the services satisfactorily is evidenced by the statement made by the deceased to her attorney, who was called at her own request to make her will on the day before she died, when she said, "I want the girl to have the home." And when the attorney asked whom she meant, Mrs. Bourgois answered, "Naomi Holmes. She has been good to me." The fact that on the afternoon of September 8, 1945, the deceased called her attorney to her home and dictated the terms of her last will and testament by which she devised and gave to appellee the premises in question, with instructions that the attorney prepare the will and bring it to the hospital the following Monday, and which was not executed by reason of her death the following day, September 9, corroborates the other evidence offered by appellee that such a contract existed and that the terms and conditions of the contract had been performed to the satisfaction of the deceased.

It is urged by appellants that even if there were a contract it should not be specifically enforced because the performance of personal services which can be estimated in money and for which recovery can be had at law will not take a contract out of the statute, for the reason that the law affords an adequate remedy; (*Fierke* v. *Elgin City Banking Co.* 366 Ill. 66; *Holsz* v. *Stephen,* 362 Ill. 527; *Yager* v. *Lyon,* 337 Ill. 271;) that it is only where the Statute of Limitations bars recovery for all or a part of the services rendered or where the services are of such a character that the law provides no standard to measure the value thereof that specific performance will be decreed notwithstanding the Statute of Frauds. (*Fierke* v. *Elgin City Banking Co.* 366 Ill. 66; *Holsz* v. *Stephen,* 362 Ill. 527; *Yager* v. *Lyon,* 337 Ill. 271.) We find no fault with these cases, but as to just when parties can or cannot be adequately compensated without resorting to a court of equity is, in many cases, difficult of solution and must

necessarily depend upon the circumstances as shown in each particular case.

Under the facts as disclosed by the record here, the appellee left her place of residence and employment in Cairo and went to the home of the deceased for the purpose of taking care of her until her death, and apparently, for the purpose of establishing a home for herself in the future. This would present considerable difficulty in determining adequate compensation. That she went to the home of Mae Bourgois for the purpose of taking care of her until her death on the promise that she was to have the home in return for her services is clearly proved by the evidence. That she did take care of her until her death is further clearly proved by the evidence. From appellee's own testimony, which was the only testimony she was competent to give, she continued to transact all the business after the death of Mae Bourgois, paying the hospital bill at St. Mary's Hospital at Cairo, selecting the burial clothes and casket, and otherwise showing her good faith in carrying out her part of the contract.

In both the *Fierke* and *Holsz cases,* cited by appellants, it was clearly pointed out that where a failure to carry out the agreement will amount to a fraud on the promisee, specific performance will be decreed. We think this rule is particularly applicable in the instant case. In our judgment, to deny equitable relief under the circumstances as shown by this record would amount to a fraud on the promisee. The Statute of Frauds is for the purpose of preventing fraud and cannot be interposed as a defense in equity when it would have such effect. (*Anson* v. *Haywood,* 397 Ill. 370; *Fleming* v. *Dillon,* 370 Ill. 325.) The granting of the equitable remedy of specific performance is a matter of sound, judicial discretion controlled by established principles of equity and exercised upon a consideration of all the facts and circumstances of the particular case. *Fierke* v. *Elgin City Banking Co.* 366 Ill. 66;

*Holsz* v. *Stephen,* 362 Ill. 527; *Johnson* v. *Gianacakos,* 356 Ill. 410; *Yager* v. *Lyon,* 337 Ill. 271.

We have carefully gone over the record in this case and are of the opinion that, under the circumstances and facts as existing in this case, the court properly granted specific performance. The decree of the circuit court of Pulaski County is, therefore, affirmed.

*Decree affirmed.*