In re Estate of William F. Niehaus, Deceased.
Mary Lucas, Appellee, v. Elizabeth Niehaus and Arnold Niehaus, Administrators of Estate of William
F. Niehaus, Deceased, Appellants.

Term No. 50M19.

Heard in this court at the May term, 1950. ▮ Opinion filed September 20, 1950. Released for publication October 20, 1950.

ELDON M. DURR, of Edwardsville, and JOHNSON & JOHNSON, of Belleville, for appellants.

PHILIP G. LISTEMAN and JAMES H. BANDY, both of East St. Louis, for appellee.

MR. PRESIDING JUSTICE SCHEINEMAN delivered the opinion of the court.

William F. Niehaus, of Collinsville, Illinois, died intestate December 28, 1947, leaving no widow and no descendants and leaving certain nephews and nieces, and descendants of such, as his only heirs-at-law. Appellants are the administrators of his estate, and appellee, Mary Lucas, is a claimant against the estate; she was a niece of the deceased wife of William F. Niehaus. Her parents had died in her early childhood, and she had made her home with William F. Niehaus for twenty-five years, from the time she was two years old, and he had stood in the relation of a parent to her, providing for her education, etc., and during grade school she went under the name of Niehaus.

Her claim is based upon the alleged promise of deceased to make a will in her favor, leaving her his entire estate, on condition she would continue to remain in his home, after the death of his wife in 1930, and care for him, etc. This she had done, but no will could be found. By virtue of the allowance of her claim in the probate court, and on appeal in the circuit court, she would receive the entire net estate, estimated to be nearly $35,000.

Appellants contend that the evidence is not of that clear and convincing character, required by law to establish a contract that would divert an estate from the statutory rules of descent; that, at best, claimant might claim compensation for services in the last years of deceased's life, they being of the type compensable in money for their reasonable worth; that claimant was not discommoded, but was furnished with a comfortable home, in which deceased bought the food and other necessaries, so that there was no basis for taking the case out of the statute of frauds, and that there was real estate involved, which barred the claim under said statute.

The evidence upon the real issues of the case, consisted of the testimony of ten witnesses for claimant, none for the defendants. Included in the ten, were the claimant's mother-in-law, sister-in-law and the latter's husband. The others were friends, neighbors, or acquaintances of the deceased.

 There can be no doubt, under the evidence, that the deceased had great affection and high regard for the claimant, and fully intended to make a will in her favor, leaving her all of his property. Moreover, he had no apparent contact with his nieces and nephews, who, it is indicated, did not visit him during his lifetime, but did call at the funeral home, after claimant had made the funeral arrangements. This evidence presents circumstances which may tend to corroborate

other proof of a contract to make a will, but we are in agreement with appellants that mere declarations of testamentary intent, based on affection, are not of themselves sufficient to establish a contract to make a will which would be enforced by the courts. *Wrestler v. Tippy,* 280 Ill. 124.

There is, however, testimony of actual promises by the deceased, as inducements to claimant. One witness was a woman who had been in the home frequently over a period of many years, and had often served as chaperon for claimant at parties and on trips, at the request of the deceased. Deceased had told her a number of times that he had promised to will everything he had to claimant. She could not fix the precise dates, except one, about the time of claimant's wedding in 1945. Deceased had also told her that claimant had promised to stay on with him the rest of his life.

A man who had been an intimate friend of deceased for many years was told by deceased, of claimant's approaching marriage, that he was happy about it, that claimant had promised to stay with him. In February and again in June of 1947, deceased told this witness he had promised to will all of his property to claimant.

Deceased informed another man, an intimate friend, that he had agreed with Mary, or promised Mary (claimant) that if she would take care of him, what he had was to be her property. He could not give precise dates, but thought this had been discussed between them on two or three occasions.

It appears that claimant had originally planned to marry several years prior to her actual wedding, but her prospective husband was going into the service when the war came on. A man who had some business dealings with deceased, and a claim against the estate, testified deceased had told him of the possibility he might lose Mary, that he tried to stave it off until after the war, and that he had promised Mary everything if she would postpone her marriage until after the war.

457

A young woman who lived in the house during the war years, and was eventually a bridesmaid for claimant, testified also to the fact that deceased had asked claimant to postpone marriage until after the war. She also had heard deceased's statements that if Mary took care of him, he would will her everything he had.

Another acquaintance of deceased, who had assisted in preparing the house for the claimant's wedding, about three weeks before its date, had a conversation with deceased, who told of his promise to leave everything to claimant if she would stay with him and continue to take care of him after the wedding.

In none of the reported declarations by deceased was there any statement by him as to the date of his first promise to, or agreement with the claimant. It does appear from the testimony of two witnesses that such promises had been iterated to claimant at a time about six years prior to his death. That was the time when she had postponed her marriage in compliance with the deceased's requests. From some of the testimony, it may be inferred that these promises were made over a longer period of time, and often repeated, but there is no positive testimony fixing the original date.

Appellants point out that the word "will" does not occur in all of these statements. In some, his statement was that he promised to leave all of his property to claimant, or that she would receive everything. Such statements appear to have the same general import. There is no evidence of any statement which could be regarded as contrary to the existence of the contract. The only fact suggested as casting doubt on it, is that no will was made, although deceased was intelligent, and understood wills. This seems to be an argument that breach of a contract should be evidence of its nonexistence. One witness, a long time intimate friend of deceased, was not informed of the contract until early

458

in 1947, which is pointed to as improbable, and as tending to weaken the weight of the evidence.

█ █ A contract to make a will may be proved by declarations and conduct of the parties not in the presence of each other. *Mayo v. Mayo,* 302 Ill. 584; *Willis v. Zorger,* 258 Ill. 574. Claimant's acceptance of the contract may be shown by circumstantial evidence, direct proof is not essential. *Weidler v. Seibert,* 405 Ill. 477; *Fleming v. Dillon,* 370 Ill. 325; *Willis v. Zorger,* 258 Ill. 574.

█ Under the law of evidence in this state, claimant was not a competent witness as to events prior to the death of decedent. This deprived the chancellor of the opportunity to hear the story from her own lips, and thus to form any judgment of her sincerity and candor, and of the credibility of her own story. Persons not directly interested in the case might also be guilty of fabrication, but the law makes them competent. The credibility of competent witnesses and the weight to be accorded their testimony are matters peculiarly within the province of the trier of facts, and this court must be guided accordingly. *Finney v. White,* 389 Ill. 374; *Brady v. Metropolitan Life Ins. Co.,* 331 Ill. App. 114. Assuming the testimony is true, we are unable to say the trial court's finding as to the contract is contrary to the weight of the evidence, and, as has often been said, the veracity of witnesses is a question for the chancellor who saw and heard them.

█ In our opinion, the evidence in this case is sufficient to justify the trial court in finding that the essential terms of the contract were clearly established. *Weidler v. Seibert,* 405 Ill. 477, 91 N. E. (2d) 416.

Another point raised by appellants appears to assert a variance. The claim in the probate court may be construed to allege the contract came into existence shortly after the death of Mrs. Niehaus, when claimant was

only twelve years of age. The only evidence pertaining to that year, is a statement then attributed to Mr. Niehaus, that he did not plan to adopt claimant, because it was unnecessary, she would receive all his property anyway. Of course, this does not indicate a contract, and, as previously noted, the evidence fails to establish the precise date of its origin.

██ Where it is proved that a contract existed and was reaffirmed several times over a period of years, the exact date of its origin is not material. Even under the strict rules of the common law it was not essential to prove with exactness the date alleged in a pleading, unless the precise date of the occurrence was an essential element of the statement of the claim. Formerly, it was the custom at common law to allege the date under a videlicet, which dispensed with strict proof, but claims in probate have never been subject to such technical forms of pleading. *Grier v. Cable,* 159 Ill. 29; *Scheel v. Eidman,* 68 Ill. 193. The claim of variance cannot be sustained.

As to the nature of the services performed by claimant, she took care of the household duties for many years, cooked for the deceased, cared for him in his illnesses, did his washing and ironing. But in addition, there were other things, not easily compensable in money. For example, in evidence is a letter from deceased to claimant, in which he expresses his delight over some small services and thoughtfulness, of the type that occur through affection. In a sense they are trivial, but they are things money does not buy, things that meant happiness and contentment to an old man, and in a larger sense, to him they were beyond price.

It is true that claimant had a good home throughout the years, by staying with the deceased. But, when she was employed in St. Louis, for a year or so, she continued to commute to Collinsville to do the housework on week ends. She deferred her marriage for several

years. Any extended honeymoon was foregone, the newlyweds spending only a few days in St. Louis where they were easily accessible in case of need. She consented to forego establishing their own private home, to stay with the elderly man until his death. Obviously, these are not things upon which any court could fix a value, and declare them compensable for a certain sum.

A court will not substitute its own judgment for that of the deceased, in placing a value upon services involving personal kindness, delicate attention to the aged, and affectionate care of the type not found as a marketable commodity. *Haslinger v. Gabel,* 344 Ill. 354; *Gallaher v. Herbert,* 117 Ill. 160. He had a right to measure that value, not merely in terms of legal liability but also by his own generosity and gratitude. *Pillsbury v. Burns,* 301 Ill. 578.

■ There is no doubt that claimant fully and completely performed her part of the contract; indeed, this is not contradicted. Under the strict wording of the statute of frauds, claimant is barred from asserting her claim. Against this, appellee presents a formidable list of cases in which such contracts as this, even though they involve real estate, have been enforced. Without attempting to analyze the various cases, it is clear that under the currently prevailing rules of law in this state, full and complete performance of the contract, for years as evident here, takes the case out of the statute of frauds, one reason given being, that the statute was not intended to permit the perpetration of a fraud. *Holmes v. Ackley,* 400 Ill. 372; *Fleming v. Dillon,* 370 Ill. 325, 332.

The findings of the circuit court are not against the manifest weight of the evidence, but in accordance therewith, and the final order of the court is affirmed.

*Affirmed.*

Culbertson and Bardens, JJ., concur.