## CRAIG v. BANE.

### No. 10946.

United States Court of Appeals, Seventh Circuit.

Jan. 19, 1954.

Samuel S. Cohon, Chicago, Ill., Arthur M. Morris, Denver, Colo., Cohon & Goldstein, Chicago, Ill., Ensel, Martin, Jones & Blanchard, James B. Martin, Springfield, Ill., for plaintiff-appellant.

Arlo E. Bane, Bloomington, Ill., J. D. Wilson, Nokomis, Ill., Leonard J. Harned, Sedalia, Mo., Chester Thomson, Bloomington, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

This is an action for specific performance of an oral agreement alleged to have been made by Henry Frank Teter (hereinafter sometimes referred to as Frank) and Charles Teter, brothers, whereby Frank agreed to adopt plaintiff and to leave his entire estate to her. The trial was to the court and upon completion of all of the evidence the complaint was dismissed for want of equity.

Plaintiff was the natural daughter of Charles Teter and Elizabeth Teter. Elizabeth died in 1891, leaving four children surviving, all under the age of six years, including the plaintiff, then aged two. The children then went to live with their grandmother who supported them with the assistance of other relatives and friends, the father, Charles Teter, furnishing no support. Plaintiff's father remarried in 1892 and, after getting in trouble with the authorities, changed his name, and moved to Iowa, where he thereafter resided. In December, 1896, he returned to Illinois, remaining for a period of about one week. At that time he turned the plaintiff, Maude, over to his brother Frank, and another child, Henry, over to his brother David. He took the other two children back to Iowa with him. Plaintiff claims that it was just prior to the time that she went to live with Frank Teter and wife that Frank agreed orally with her father, Charles, that Frank would adopt her and at the time of his death leave her his entire estate.

In 1896, Frank Teter and his wife were in their early thirties. They owned no property, but about three years later purchased a farm with borrowed money, and lived thereon, and plaintiff lived there with them as a member of the family. As she grew older she performed many of the household duties and some light farm chores. After 1916 the Frank Teters moved to Wilmington, Illinois, where plaintiff continued to live with them as a member of the family, and continued to do most of the household work. This continued until 1921 when she married and moved to Colorado. At all times plaintiff was treated kindly by the Teters. She was well clothed and received an eighth grade education. Frank Teter died August 17, 1947, testate, leaving no widow or children. His will left his estate to others than plaintiff. Plaintiff was never legally adopted by the Teters.

During his lifetime Frank Teter gave plaintiff various sums of money, totaling about $2,900. He paid the burial expenses of her daughter who died in 1938. As early as 1920 Frank Teter made provisions for plaintiff in his will, bequeathing her the sum of $10,000. He made similar provisions in wills executed after the death of his first wife. In 1938 when he was contemplating a second marriage, Frank Teter deeded plaintiff 80 acres of real estate, which she thereafter sold to the United States Government for $10,800. In a will dated January 12, 1942, Frank Teter provided, "I have made no provisions for Maude Teter Craig in as much as I have given liberally to her during my lifetime."

At the trial two witnesses testified that they heard the oral agreement made —56½ years prior to their testimony. They were plaintiff's brother, Roscoe, who was aged nine in 1896, and her sister, Gertrude McDaniels, who was aged eleven at that time.

The complaint herein stated that the agreement was that plaintiff was to have a child's share of Frank Teter's estate, but that if Teter survived his wife plaintiff was to have the entire estate. However, on the trial Roscoe and Gertrude testified that nothing was said about a child's share, and that the agreement was that plaintiff was to receive all of Frank Teter's property. Plaintiff testified that the date of the alleged agreement was December 27, 1896. Roscoe testified that it was in watermelon time in August, 1896, and Gertrude McDaniels was uncertain as to the date.

The district court made findings of fact and conclusions of law. Some of the findings are included in the statement hereinbefore set forth; in addition the court found Henry Frank Teter during all of the years that plaintiff resided with him provided her with a suitable home and maintenance superior to those that her natural father would have been able to furnish her. In Finding No. 8 the court further found "from a consideration of all the evidence herein that there is no clear, explicit and convincing proof of an enforceable contract between the said Charles Teter and said Henry Frank Teter; that even if it be thought

that there was an oral arrangement for the adoption of the plaintiff, yet by the passage of time that has become a moot question; that even though there has been partial performance of the arrangement by which the plaintiff went to live with Henry Frank Teter, still there can be no fraud perpetrated upon the plaintiff by recognition of the Statute of Frauds, as such performance has been to the benefit and not the detriment of the plaintiff."

We understand the basis of the district court's decision is that an enforceable contract that Frank Teter would leave all of his property to the plaintiff was not established by the proof in this case, but that conceding that a contract was made it is unenforceable by reason of the Statute of Frauds.

██ It is well established in Illinois that only clear, explicit, and convincing evidence will justify a finding of the existence of a contract to make testamentary disposition, Ellis v. Williams, 414 Ill. 99, 101, 110 N.E.2d 225; that the proof must be clear and conclusive not only as to the existence of the contract but also as to what its terms were, Chambers v. Appel, 392 Ill. 294, 298, 64 N.E.2d 511; Hickey v. Hickey, 374 Ill. 614, 621, 622, 30 N.E.2d 423; Aldrich v. Aldrich, 287 Ill. 213, 222, 122 N.E. 472; and this is especially so where the alleged oral agreement makes disposition of a deceased's property different from that which the law prescribes, Hickey v. Hickey, supra; Rigolio v. Knopf, 390 Ill. 258, 264, 61 N.E.2d 56; Anderson v. Augustana College, 300 Ill. 72, 80, 132 N.E. 826. It was stated in one opinion that the proof upon which the conveyance is asked must be established so convincingly as to leave "no reasonable doubt in the mind of the court." Lonergan v. Daily, 266 Ill. 189, 192, 107 N.E. 460, 461.

Plaintiff seeks recovery on the theory that she proved the existence of the contract upon the testimony of her brother and sister recalling a conversation that occurred over 56 years previously when they were nine and eleven years of age respectively. She relies upon the rule of law in Illinois that contracts to devise real estate and personal property may be enforced in equity in certain cases, so as to furnish a more complete and fuller justice than that afforded in an action at law, Edwards v. Brown, 308 Ill. 350, 355, 139 N.E. 618, and that a remedy is afforded where the contract has been performed by one party in such a way that the parties cannot be placed in status quo or damages awarded which would be adequate compensation, Weir v. Weir, 287 Ill. 495, 501, 122 N.E. 868; Koenig v. Dohm, 209 Ill. 468, 480, 70 N.E. 1061. Plaintiff claims that she performed her part of the contract by remaining with the Teters until she married in 1921. Apparently under her view of the terms of the contract she was not required to remain with the Teters for any fixed period of time. In that respect the alleged contract here differs from the one in issue in Estate of Niehaus, 341 Ill.App. 454, 461, 94 N.E.2d 525, heavily relied on by plaintiff, for there the plaintiff agreed to remain in Niehaus' home after the date of the death of his wife and to care for him. She postponed her marriage and sacrificed her personal wishes to comply strictly with her agreement that she stay with Niehaus and care for him until his death. There were ten witnesses to the agreement, or statements of the deceased, confirming the agreement. In the case at bar Frank Teter in his declining years and when he was in ill health endeavored time and time again to have the plaintiff come to his home and care for him. Apparently she did not feel under any obligations so to do.

The trial court found that the evidence in this case was not sufficient to prove the contract which plaintiff alleged did exist. In spite of the testimony of plaintiff's brother and sister recalling words of a conversation alleged to have occurred over 56 years previously, when these two witnesses were mere children of nine and eleven years respectively, the court was not compelled to believe their testimony. For instance there was the testimony that the night before the trial, plaintiff's attorneys for several hours

had gone over with them the testimony that they were to give the following day. A reading of the record indicates that their answers were faltering and uncertain, and at one point, after giving an answer, Mrs. McDaniels said, "Is that what you want me to say?" In the oral argument to the district court the attorney for the defendant stated that Mrs. McDaniel's question was directed to one of the attorneys for the plaintiff, and there appears to have been no denial of or objection to the attorney's statement.

Further, the trial court undoubtedly took into consideration several inherent improbabilities. In 1896 plaintiff's father was unable to take care of his children. It was undoubtedly a great favor to him that his brother Frank was willing to take one child and his brother David another. Further, the testimony showed that Frank was an honest, honorable man, whose reputation for integrity and fair dealing was excellent. He was highly respected in his community, and was a member of the church board and the school board. Throughout the entire record there is not one word showing that Frank at any time after 1896 admitted or suggested to anyone that he had an agreement with his brother Charles to adopt the plaintiff, and at his death to leave her his entire estate.

In 1896 Frank Teter and his wife were in their early thirties, an age when it would be improbable that Frank would enter into a contract to dispose of any estate he might acquire, without providing anything for a surviving wife or natural child of his own. Certainly we cannot say that the finding of the trial court that no enforceable contract existed is clearly erroneous.

The finding which we approve, that an enforceable contract did not exist, is sufficient to support the judgment dismissing the complaint. However, it may be stated that the record completely supports the trial court's finding that no fraud was perpetrated upon the plaintiff. It is established Illinois law that a court of equity will not permit the Statute of Frauds to work a fraud upon a party to an oral contract. Estate of Niehaus, supra; Holmes v. Ackley, 400 Ill. 372, 379, 81 N.E.2d 178; Fleming v. Dillon, 370 Ill. 325, 330, 18 N.E.2d 910, 120 A.L.R. 1218. However, in the case at bar plaintiff benefited greatly by being able to live in a clean, Christian home as a member of a highly respected family, Snyder v. French, 272 Ill. 43, 45, 46, 111 N.E. 489, in contrast to what her lot might have been had she lived with her father or been an object of charity.

Judgment affirmed.