ELAM HILL *et al.* Defendants in Error, *vs.* JACOB ALBER *et al.* Plaintiffs in Error.

*Opinion filed December 17, 1913.*

1. PLEADING—*what circumstance should be considered in determining truth of averment in answer.* The failure of the defendants to a bill for specific performance to set up the defense of a cancellation of the original contract until the filing of an amended answer five months after the original answer (which made no such defense) had been filed, although the fact, if true, must have been known when the original answer was filed, is a circumstance to be considered in determining the truth of the averment.

2. SPECIFIC PERFORMANCE—*parties may, by their acts, waive a provision that time is of essence of the contract.* A provision in a contract for the sale of land that time of payment shall be of the essence of the contract is waived, where the evidence shows that both parties disregarded such provision from the beginning, and that the payments on the purchase price and payments of taxes and of interest were none of them made according to the terms of the contract or at the time fixed thereby.

3. SAME—*when actual tender of final payment is unnecessary.* Where the only thing which remains for the purchaser to do to entitle him to a deed is to make the final payment, but there are unsettled accounts between him and the seller over which there is a dispute in good faith, it is sufficient if the purchaser is ready and willing to pay the amount found due upon an accounting, and no actual tender need be made.

4. SAME—*when seller cannot claim compensation for services.* Where the parties to a contract for the sale of land make an arrangement whereby the seller is to look after the collection and disbursement of the funds of the purchaser, who was then financially embarrassed, such arrangement being for the benefit of the seller to secure the purchaser's indebtedness to him upon all accounts, the seller is not entitled to compensation for his services, if no agreement to that effect was made.

5. COSTS—*costs, in chancery, are largely within the discretion of the trial court.* Costs, in chancery, are to be awarded in the discretion of the trial court, and unless there is an abuse of such discretion the Supreme Court will not interfere.

WRIT OF ERROR to the Circuit Court of Lee county; the Hon. OSCAR E. HEARD, Judge, presiding.

HOYNE, O'CONNOR & IRWIN, (CARL J. APPELL, of counsel,) for plaintiffs in error.

TRUSDELL, SMITH & LEECH, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This writ of error is prosecuted to reverse a decree of the circuit court of Lee county for the specific performance of a contract for the sale of real estate.

On January 27, 1909, Jacob Alber and Carrie Alber, his wife, the plaintiffs in error, being the owners of a farm of 199.9 acres in Lee county, entered into a written contract for its sale to the defendants in error, Elam Hill and Ada Hill, his wife, for $24,000, to be paid for $1000 in cash, $3000 in two years and $6500 in three years, upon which payments Alber and wife were to convey the land subject to two mortgages for $10,000 and $3500, respectively. The purchasers were to pay all taxes and the interest on the mortgages from March 1, 1909, and keep the buildings properly insured. The time of payment was declared to be the essence of the contract. The Hills entered into possession of the land immediately and have remained in possession ever since, though for three years after the date of the contract they lived on another farm, known as the Beier farm, which Elam Hill was also operating. The cash payment of $1000 and the payment of $3000 two years later were made by means of Hill's notes indorsed by Alber and discounted at banks, which notes were renewed and reduced from time to time and finally paid.

Hill did not pay either the taxes or the interest, as required by the contract, but they were paid by Alber, who was afterwards reimbursed by Hill. Hill was greatly involved financially, his creditors were pressing him, and in the spring of 1911 he gave to Alber a chattel mortgage on most of the property on his farm securing various items of indebtedness to him, and he also gave chattel mortgages to others of his creditors. About the same time he assigned to Alber a milk and dairy business which he was conducting, Alber agreeing to receive the money and pay it to Hill's creditors. Alber received the money from the milk business, products of the farm were delivered to and sold by him, Hill bought stock of him, Alber paid certain of Hill's debts, and he took another chattel mortgage on other property of Hill. In September, 1911, some notes given by Hill for premiums on insurance policies being past due and unpaid, Alber told Hill that because he had not kept up the insurance Hill had lost the place and that Alber would now get the place insured in his own name. The contract contained the provision that "in the case of the failure of the parties of the second part to make either of the payments, or any part thereof, including such payments of interest, or perform any covenants on their part hereby made and entered into, this contract shall, at the option of the parties of the first part, be forfeited and determined, and the parties of the second part shall forfeit all payments made by them on this contract." The parties of the second part (the Hills) covenanted to keep all buildings on the property insured in strong and reliable stock companies, so as to secure the parties of the first part against any possible loss by reason of fire or wind storms. The evidence does not show clearly what policies were canceled, or whether they covered buildings on the property in controversy, or what was their amount. It does appear that there was $3200 of insurance on the buildings in force all the time. The evidence does not indicate the value of the buildings or what

amount of insurance had been or ought to be carried on them, but it seems to be conceded in the briefs that some insurance carried on the buildings became void by reason of Hill's failure to pay his notes given for the premiums, and the case has been argued on that theory.

Alber's claim is, that in September, 1911, when he learned that Hill had not paid the insurance on the place, he told Hill that he had lost the place. Alber further claims to have stated to Hill that he intended to take the property in his own name now, and that if Hill was able at any time up to March 1, 1912, to pay his outstanding debts besides what he owed Alber, Alber would deal with him on the farm proposition and would not be hard on him and would not charge him much more than the agreement called for at that time; that Hill said he would be glad to do that; that he would have a sale of $10,000 or $12,000 on February 2, and after that would have plenty of money to pay Alber and everybody else. Alber said he would not put it in writing but would do that provided Hill did what he said, and they separated. The position of the plaintiffs in error is, that the written contract was thus canceled by an agreement of the parties; that Hill considered it canceled, and that after that time there was no contract between the parties, but only a proposition on the part of Alber that he would convey the property to Hill at a slight advance in price if the latter would pay him his debt by March 1, 1912. The original answer of the defendants did not rely upon this defense or claim that there had been any cancellation of the original agreement. The amended answer, filed five months later by other solicitors, avers that about September 15, 1911, Elam Hill agreed with the defendant Jacob Alber to a cancellation of said contract, and Alber then stated to Hill that he was still willing to sell Hill the farm upon reasonable terms if terms could be satisfactorily arranged and agreed upon and if Hill should convince Alber that Hill would be able to carry out the terms. The

answer does not allege a forfeiture but a cancellation by agreement. The facts alleged, if these allegations are true, must have been known to the plaintiffs in error when they filed their original answer, and the omission to aver them is therefore a circumstance to be taken into consideration in determining the truth of the allegation. (*Calkins* v. *Calkins,* 220 Ill. 111.) Hill denies that he ever had any talk with Alber in regard to the abandonment of the contract. Mrs. Hill was a party to the contract as well as Mrs. Alber, and it is not claimed that either of them ever assented to such abandonment. Alber continued to receive the money on the milk contract. He charged Hill with semi-annual interest paid on the $10,000 mortgage, and paid and charged him with the premium note given for the insurance, the non-payment of which he says was the cause of cancellation. These were not obligations for which he could charge Hill except by reason of the written contract of sale. The evidence does not show that the contract was abandoned.

It is insisted that the time was not extended beyond March 1, 1912. The time of performance under the original agreement was January 27, 1912. This time was extended by the acts of the parties. Hill had a sale on February 2, 1912, the net proceeds of which were paid over to Alber. They were much smaller than anticipated, and during February negotiations were pending between Hill and Alber. Hill was seeking an extension and Alber urging him to raise the money. The two finally fell out over the settlement of their accounts and a claim of Alber for $1000 for attending to Hill's affairs during the past year. It is not specially important whether the time was extended beyond March 1, 1912, or not. While the contract declares time to be of the essence of the contract, the parties had disregarded this provision from the beginning. The payments on the contract, payments of taxes or payments of interest were none of them made according to the contract

or at the time fixed by the contract. The conduct of the parties showed their intention to disregard this provision of the contract, and it was thereby waived.

The plaintiffs in error contend that there was no tender of the purchase price, therefore defendants in error were not entitled to a deed. They further insist that the defendants in error did not show that they were able to comply with the contract on their part. The only thing the defendants in error were required to do was to pay the remainder of the purchase price. On February 29 Hill and Alber met in the office of John Erwin, in Dixon, for the purpose of arranging their business about the farm, but it could not be done on that day as Mrs. Alber was not at home. She did not return until two or three days later. Before the meeting in Erwin's office Hill and Alber had had a falling out over their accounts and there was a disagreement as to the amount due. There were some accounts unsettled between them. Alber claimed that a mistake of $477 had been made against him in a previous settlement. He also claimed that he should be allowed $1000 for attending to Hill's business. There had been a settlement on January 15, 1912, showing a balance due Alber, but there had been none since and Alber had been in receipt of the milk money. An accounting was necessary to determine the balance. Alber's claims and Hill's were inconsistent. Hill knew only approximately the amount due. It was necessary that he should be able to perform, and the proof shows that he had made arrangements for the money and the payment could have been arranged if the parties could have agreed on the amount. But Hill could only know the amount due approximately. There were unsettled accounts about which there was a controversy in good faith. An accounting was necessary, and it was sufficient that the defendants in error were then and there able and willing to pay the amount found to be due upon an accounting.

261 — 9

Objection is made to the refusal of the master to allow Alber, on the accounting, $1000 for services in attending to Hill's business and $1500 for interest on money paid out for Hill's benefit. The arrangement for the collection and disbursement of Hill's funds by Alber was made for the latter's benefit, to secure Hill's indebtedness to Alber on all accounts. Alber's services were doubtless beneficial to Hill, but in the absence of an agreement to pay for them Hill was not liable to do so. As to the interest, counsel have not in their argument indicated any items upon which interest should have been allowed to Alber, but content themselves with the general statement that it seems very unjust that Alber should not receive any interest on the amounts of money he advanced to Hill. Our attention is not called to any sum advanced on which interest should have been allowed and was not allowed.

The defendants in error, by cross-errors assigned, object to the charge against them in the account stated by the master of a note for $600, amounting to $747. They contend that this note was given as collateral security for an indebtedness of Hill on which Alber was security, which Hill paid. Hill testified it was given for the purchase price of cattle. The possession of the note, uncanceled, was evidence that it was a valid obligation, and the evidence to the contrary is not sufficient to overcome the presumption.

The defendants in error also object that the accounting should not have gone back of the settlement of January 15, 1912, but under the evidence that was clearly not intended as a final accounting.

The decree required the plaintiffs in error to pay two-thirds of the costs, and they complain of the decree in this respect. Costs in chancery are to be awarded in the discretion of the court, and we do not regard the decree in this respect as an abuse of the judicial discretion.

The decree of the circuit court will be affirmed.

*Decree affirmed.*