Anthony Company, Plaintiff (Appellee), v. William D. Johnson, Defendant (Appellant).

Gen. No. 11,197.

Second District, Second Division.
January 16, 1959.
Released for publication February 3, 1959.

William D. Johnson, of Streator, pro se, and Davis & Dordan, of Streator, for defendant-appellant.

Pool & Langer, of Ottawa, and Berry & O'Conor, of Streator, for plaintiff-appellee.

PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

The plaintiff, Anthony Company, in September, 1944, was and for some time prior thereto, had been engaged in the manufacture and sale of industrial and farm equipment and machinery in the City of Streator, Illinois. The defendant, W. D. Johnson, was at that time engaged in the business of selling farm machinery.

In the month of September, 1944, an oral agreement was entered into between the plaintiff and defendant whereby plaintiff was to manufacture certain steel wagon boxes designed by the defendant and defendant was to sell them to dealers on a commission basis. No date was fixed for the expiration or termination of this agreement or arrangement.

Defendant sold wagon boxes, farm truck bodies and other farm equipment and received a ten per cent commission on the wagon boxes and farm truck bodies sold and a five per cent commission on other farm equipment sold by him until the early spring of 1945 when the plaintiff informed the defendant that they desired a contract in writing that would more definitely clarify the relationship and duties of the plaintiff and defendant.

Thereafter, a series of conferences were held between plaintiff and defendant concerning the terms of the proposed written contract including commissions to be paid. The contract was finally entered into and signed by the parties on May 1, 1945, and provided as follows:

May 1, 1945

Mr. William D. Johnson, or Johnson Farm Equipment Company, Streator, Illinois.

In order to arrive at a closer understanding of your business connection with this company in the role of

soliciting sales and making distribution of Farm Equipment manufactured and to be manufactured by the Anthony Company, and to make for a closer relationship between us, and more especially of tieing your implement dealers into an organization for the post-war competitive market, following provisions and conditions would be acceptable to us.

1. You be in charge of sales franchise distribution of such farm equipment as we produce.

2. Salesmen and District Managers suggested by you shall have the approval of the General Sales Manager of the Company. They shall be employed by the Company on such a basis as may comply with Company policy.

3. Your territory shall be the Central Midwestern States, principally the Corn Belt, including Illinois, Iowa, Indiana, Nebraska, Minnesota, Wisconsin, Michigan and Northern Missouri.

4. An exclusive agreement in the nature of a franchise shall be entered into whenever possible, with one dealer (larger Cities excepted) rated as the most progressive and best adapted for a stated prescribed territory. This agreement shall be subject to our approval, and shall cover farm equipment items manufactured by us exclusively.

5. At the present time the following constitutes the Farm Equipment Line referred to, which however may be added to from time to time:

(a) Flared Grain Tank (steel or wood).
(b) All Purpose Wagon Body (steel or wood).
(c) Running Gears for Wagon Bodies; rubber-tired.
(d) Tractor Shovel—Fork.
(e) Body Hoists as built for farmers, for sale thru exclusive farm dealers.

131

Mr. William D. Johnson, or
Johnson Farm Equipment Company -2- May 1, 1945.

6. List (or retail) prices of the foregoing Farm Equipment Line shall be determined subject to the approval of the OPA.

7. Dealer's discount shall be 20% off of said list prices unless, in a highly competitive post-war market, it should be deemed advisable to grant an additional 2½% (up to 5%) for cash.

8. The name of "Johnson Farm Equipment Company" shall be eliminated from all orders and descriptive literature, and all correspondence shall be carried on in the name of this Company.

9. All dealer credits shall be passed upon by the Treasurer of this Company.

10. In consideration of your turning over to us all good-will developed by you in the past with implement dealers, including all orders obtained from them, you are to be allowed a commission on our net realized from sales exclusive of freight, mounting and tax, computed as follows:

4% on net business completed annually up to $150,-000.00.

1% on net business completed annually in excess of $150,000.00, on the complete line of farm equipment as outlined above.

You should be entitled to draw against commissions earned in the sum of $500.00 per month.

The above computation as to volume of business completed to be on an annual basis, beginning the date of this agreement.

11. We will furnish all printed matter and advertising that we may deem necessary, or advisable, and agree to pay all traveling expenses authorized by our General Sales Manager.

12. This agreement shall continue in force for a period of one (1) Year from date thereof, subject to

renewal by mutual agreement from year to year, but with the understanding that any such extension may be terminated by either party on sixty days notice.

Approved and Accepted: ANTHONY COMPANY
Wm. D. Johnson By C. Worrells, Treas.

Wm. D. Johnson, Johnson Farm Title
 Equip. Co.

After the execution of the written contract, plaintiff turned over the sale of articles of farm equipment and machinery manufactured by it to the defendant and began the creation of a sales organization for the selling of such farm equipment and machinery. Plaintiff employed salesmen to cover the territory and printed literature and advertising material. The salesmen operated under the direction and supervision of defendant. Plaintiff expended approximately $25,000 in the building of a sales organization to sell its farm equipment and machinery. Under the direction of the defendant, the plaintiff obtained exclusive sales contracts, with some 250 farm machinery dealers, and was able to sell all of the machinery and equipment it could produce.

Following the execution of the written contract, defendant secretly started dealing independently with a number of other companies which were competing with the plaintiff. The defendant also designed a farm wagon box which was manufactured later by another company and sold by Johnson Farm Equipment Company, operated by the defendant. There was also a dispute as to money defendant collected from dealers that is alleged to be the property of plaintiff. On January 31, 1946, plaintiff called the defendant in and terminated his employment because of his dealings with firms competing with plaintiff. The defendant was instructed to turn over all exclusive franchises in his possession made on behalf of the plaintiff with dealers. He failed to return to the plaintiff approxi-

mately thirty of these franchises. Almost immediately after the termination of his employment, defendant began writing to dealers of the plaintiff asking the dealers to cancel all past orders with the plaintiff. Many of the dealers did, in fact, cancel their orders. Plaintiff introduced in evidence a list of the dealers who cancelled their orders and the amounts of the respective orders. The cancellations were from dealers with whom plaintiff had exclusive franchise contracts which had been procured by the defendant for the plaintiff while he was in the employment of the plaintiff under the contract of May 1, 1945.

On June 14, 1946, the plaintiff filed a complaint, consisting of three counts, in the Circuit Court of LaSalle County. Count I sought an injunction against the defendant enjoining him from doing the following: 1. Engaging in the sale of farm equipment of the same general kind as that manufactured by plaintiff. 2. Engaging in the sale of farm equipment under the name of Johnson Farm Equipment Company. 3. Communicating or dealing with the dealers in plaintiff's sales organization, and those with whom defendant procured exclusive franchise contracts for the sale of plaintiff's merchandise.

Count II alleges that plaintiff sold equipment to a certain farm equipment company in the sum of $3,817.-80 which was paid to defendant who wrongfully retained same.

Count III alleges that plaintiff sold equipment to an implement company for $157.60 which defendant also wrongfully retained.

Defendant filed a counterclaim for an accounting for alleged commissions owed to him by the plaintiff.

The gist of the controversy is whether or not the relationship between the parties is controlled by the agreement of May 1, 1945, or whether same is determined by the prior verbal agreement of September, 1944.

134

The cause was referred to a Master In Chancery and on October 15, 1955, the Master made certain findings which were objected to by both plaintiff and defendant. On May 22, 1957, the Master filed amended findings and conclusions to which defendant filed objections and exceptions. The trial court overruled most of defendant's objections and on April 10, 1957, entered a decree and judgment from which defendant appeals.

The decree and judgment found that plaintiff was entitled to an injunction as prayed at the time of filing of the complaint and taking evidence, but that subsequently thereto plaintiff had ceased the manufacture and sale of farm equipment and the necessity for the injunction is now "wholly moot," and that no injunction should issue as of the present time; that the cross complaint be dismissed for want of equity; that plaintiff was indebted to the defendant in the sum of $4,337.89 at the time of termination of his employment; that defendant was indebted to plaintiff for $3,817.80; that defendant have judgment for the difference of $520.09 against plaintiff and that the costs of the case be taxed against the defendant.

Defendant contends that the oral contract of September, 1944, is controlling and that the written contract of May 1, 1945, is null and void because of lack of consideration, that it is in restraint of trade, that it is *ultra vires* and that the discharge of the defendant for misconduct voided the contract from the beginning and terminated all of the plaintiff's rights thereunder. Defendant further contends that since the written contract of May 1, 1945, is null and void, he is entitled to a commission of five per cent and ten per cent as provided by the verbal agreement of September, 1944, on all farm equipment sold subsequent to May 1, 1945.

■■■■■ The principal attack made by the defendant on the written contract is on the basis that it is not supported by consideration. Consideration is defined

135

in Lipkin v. Koren, 392 Ill. 400, 406, 64 N.E.2d 890, 893, as follows:

"It is a fundamental rule of law that a valuable consideration consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other."

No definite period was fixed by the terms of the verbal agreement of September, 1944, for its termination. The written contract expressly employed defendant for a one year period and plaintiff was, therefore, bound to employ the defendant until May 1, 1946, provided the defendant performed the duties imposed upon him by the terms of the contract. Further, plaintiff bound itself to pay a definite commission to defendant on his sales. Both of these obligations undertaken by the plaintiff are certainly legal considerations to support the written contract of May 1, 1945. We find further that there is no merit in defendant's contention that the contract was in restraint of trade.

██ Defendant argues that the written contract is void as being *ultra vires* because the minutes of the meeting of the Board of Directors of the plaintiff company did not show an authorization to execute the contract of May 1, 1945. The general rule is, that the plea of *ultra vires* shall not prevail when, instead of advancing justice, it would accomplish a wrong; and it makes no difference in this respect, whether it is interposed for or against a corporation. Darst v. Gale, 83 Ill. 136. Defendant carried on a long series of negotiations with the executives of the plaintiff company which culminated in the written contract. Defendant has had the benefit of working for the plaintiff under the contract, received and collected compensation for his services. He cannot now contend that the contract was *ultra vires* and void. We agree with the findings of the Master that, "the contention of the defendant

136

that it was *ultra vires* of plaintiff and otherwise invalid, are not well taken." We conclude that the Master's findings, in this respect, were completely justified by the evidence.

■ We cannot agree with defendant's theory that the discharge of the defendant for misconduct voided the written contract from the beginning and terminated all of the plaintiff's rights thereunder. This reasoning is without logic. The Master expressly found that the defendant was guilty of bad faith in the performance of his duty as an employee of the plaintiff. In violation of the contract, he carried on business transactions with and sold farm equipment manufactured by competitors of plaintiff. This certainly was ample justification for the plaintiff to terminate the employment relationship. The discharge of the defendant did not terminate the rights of the plaintiff under the written contract.

■ The decree and judgment provided that the necessity for an injunction is now moot and that no injunction should issue as of the present time. In view of the fact that the trial court found that the plaintiff is no longer engaged in the manufacture of farm equipment, the decree should provide that the injunction is denied rather than "that no injunction should issue as of the present time."

■ We believe that the trial court was correct in finding that plaintiff was indebted to defendant in the amount of $520.09 and in denying the remainder of the defendant's counterclaim. Since the court found in part for defendant on his counterclaim and denied the injunction *at this time,* the cost should have been apportioned equally between plaintiff and defendant. The judgment against the defendant for all of the costs was improper and inequitable. Normally, the trial court has a wide discretion in the assessment of costs but that discretion should not be abused. This estab-

lished rule was recently restated in Firemen's Insurance Company v. Newell, 10 Ill.App.2d 371, 375, 135 N.E.2d 116, 118–119:

"It is provided by the Illinois statute that the assessment of costs in a court of equity, where no provision otherwise is made by law, shall be in the discretion of the court (Ill. Rev. Stat. chap. 33, par. 18), and it has been consistently held that the award of costs rests in the discretion of the court. Fleming v. Dillon, 370 Ill. 325, 18 N.E.2d 910, 120 A.L.R. 1218; Hill v. Alber, 261 Ill. 124, 103 N. E. 612. It is true that such discretion is reviewable and the finding of the trial court may be reversed if the discretion resting in him has in the opinion of the reviewing court been abused. Cahill v. Cahill, 402 Ill. 416, 84 N.E.2d 380."

For the reasons herein stated, the decree and judgment of the Circuit Court of LaSalle County is affirmed except that it is reversed and the cause is remanded with directions to deny the injunction and with directions to enter judgment assessing the costs equally between plaintiff and defendant.

Affirmed in part; reversed in part and remanded with directions.

CROW and SOLFISBURG, JJ., concur.